GOTTLIEB DEIERLING, Appellant, v. JOHN SLOOP, Respondent.

**Kansas City Court of Appeals, November 23, 1896.**

1. **Sales:** OPTION CONTRACT: STATUTE. Section 3931, Revised Statutes, 1889, discussed in view of *Connor v. Black,* 119 Mo. 126, and *McGrew v. Exchange,* 85 Tenn. 572.

2. ———: ———: ———: INTENTION. Where the buyer intends that a contract for future delivery shall be an actual delivery, and the seller expects to deliver unless the price goes beyond the contract price, it is not a gambling contract, and does not come within section 3931, Revised Statutes, 1889.

*Appeal from the Schuyler Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED AND REMANDED.

*Nat M. Shelton* and *Edward Higbee* for appellant.

By the express provisions of the statute it is a sale "without any intention" of delivering the property sold that is prohibited. *Connor v. Black,* 119 Mo. 140, foot of page. Here the evidence shows defendant thought corn was bound to be cheap, and that he intended an actual delivery. The mental reservation that, if corn should be high, he would pay the difference according to defendant's instruction, is equivalent to an intention not to deliver.

ELLISON, J.—Plaintiff is a farmer, and was the owner of one hundred and three head of cattle, as well as a large number of hogs. He had not enough corn to feed them, and on the eleventh day of June, 1894, he contracted with defendant for ten thousand bushels of that grain, to be delivered in the month of January

following, at the price of twenty-five cents per bushel. Defendant did not have the corn on hand at the date of the contract. He failed and refused to deliver as he agreed, and plaintiff, being compelled to buy other corn for his stock at an advanced market price, brought this action against defendant for breach of the contract, claiming as his damage the difference in the price agreed upon with defendant and the price he was compelled to pay. The judgment below was for defendant.

The defense is based on section 3931, Revised Statutes, 1889, defendant asserting that at the time of the contract he did not intend to deliver the corn, but expected to pay to plaintiff the difference in price, if the price advanced. The statute reads that: "All purchases and sales, or pretended purchases and sales, or contracts and agreements for the purchase and sale, of the shares of stocks or bonds of any corporation, or petroleum, provisions, cotton, grain, or agricultural products whatever, either on margin or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold, and all the buying or selling, or pretended buying or selling of such property on margins or on optional delivery, when the party selling the same, or offering to sell the same, does not intend to have the full amount of the property on hand, or under his control, to deliver upon such sale, or when the party buying any of such property or offering to buy the same, does not intend actually to receive the full amount of the same if purchased, are hereby declared to be gambling and unlawful, and the same are hereby prohibited. Any company, copartnership, or corporation, or member, officer, or agent thereof, or any person found guilty of a violation of the provisions of this section, shall be fined in a sum not less than three hundred dollars nor more than three thousand dollars."

The case as developed by the evidence shows that while plaintiff knew that defendant did not possess or own the corn at the date of the contract, he had no intimation of the secret intent on defendant's part (if there was such intent) not to deliver. Plaintiff bought the corn for actual use and expected its actual delivery. The course of the trial in the circuit court was on the theory that, notwithstanding plaintiff's entire innocence and good faith in the transaction, yet, under the terms of the statute aforesaid, if defendant secretly entertained the intention not to deliver when he made the contract, plaintiff is without remedy. We are not aware of any case since the enactment of the statute where what may be called the innocent party has brought an action, where such defense has been set up.

There are two cases arising since the passage of this act and one said to be similar in Tennessee: *Connor v. Black*, 119 Mo. 126; *McGrew v. City Produce Exchange*, 85 Tenn. 572. But each of those was instituted by what may be termed one of the guilty parties to the transaction. The decision, however, in each case, is broad in its extent and asserts in terms that *each* of the contracting parties is responsible for the *intention of the other*. And that notwithstanding one of the parties acted *bona fide* and had no intention to violate the statute, yet if the other had such intention, the innocent one must suffer, though the guilty one would escape all inconvenience arising from an unfortunate contract. The inevitable result being that whenever a party to such contract found it inconvenient to comply with its provisions, he only need to show (as he may always easily do, if so inclined) that it was not his intention to do so when he made the agreement. The only thing to deter one so inclined from making such defense is that he would become liable by the same statute to a criminal prosecution.

In each of the cases referred to it is said that contracts for future delivery with a party who has not the article at the time he contracts, may still be made, if for legitimate and proper purposes. If it is proper to make such a contract for legitimate purposes, how is it possible that a party who entertains such purpose and is innocent of any different purpose by the other contracting party can, with any show of reason, be made to suffer by a denial of civil remedy and by criminal prosecution? For it must be remembered the statute prescribes a criminal penalty on those who violate its provisions, in addition to the civil penalty of losing a right of action for damages suffered. So that if an innocent party to such transaction loses his civil remedy, it is, and must be, for the reason that he has violated the statute. But if he has violated the statute, he can be prosecuted criminally and convicted for that which it is declared he may lawfully do, provided he does it for legitimate purposes. Confessedly, in this case, plaintiff's purpose and object was legitimate—he was merely providing feed for the cattle and hogs on his farm; yet, for doing this, it being afterward discovered that the party with whom he contracted entertained a secret intention to disappoint him and not deliver, he is liable to prosecution criminally.

If it had not been decided by the cases aforesaid that contracts for future delivery, where the intention of the seller was to deliver and the buyer to receive, could be legally made without hindrance of the statute, we could find some reason for the consequences which have been said to follow the provisions of the statute. If the legislative mind had conceived that since contract sales for future delivery were made the basis and a secure agency for gambling in agricultural products, to the great hurt and injury of the country,

it would interdict such contracts altogether and thus cut off the iniquity by cutting off the means whereby it was carried on—if that should be the interpretation of the statute, it would present none of the incongruities suggested. For in that case everyone would know that he could not make such a contract at all and that if he did he could have no remedy on it and would be liable to a criminal prosecution. And this would seem to have been the view of the supreme court of Tennessee, as expressed in the following: "In making the seller responsible for the intent of the buyer, and the buyer responsible for the intent of the seller, it intended to suppress gambling by confining the business of buying and selling for future delivery in such limits as would practically preclude the possibility of it."

But in the succeeding paragraph is the statement to which we have referred above, that such deals may yet be made for legitimate purposes. The court says: "The *bona fide* dealer may still operate, but he can not do so upon any terms which do not protect the community against the pernicious and ruinous speculation in the rise and fall of prices. He is obliged, for his own safety—as this act provides extreme penalties—to avoid the speculator, and buy only for the legitimate demands of necessity and trade."

We are thus left with an interpretation of the statute that "dealing in futures" is not prohibited, if done with an intention to deliver and to receive, yet if either of the parties did not have the intention, both must be punished, though one of them is innocent and only dealing for legitimate and praiseworthy purposes, without knowledge of the other party having any different purpose.

But under the interpretation given the statute by the supreme court of Tennessee and adopted by our supreme court, in order to make the plaintiff responsi-

ble for the intention of the defendant, the latter must have been "without any intention of delivering the property so sold." And the question is, does the evidence show him to have been in that condition of mind when he made the contract of sale? The evidence shows that he had a defined intention to deliver in the probable contingency of corn being at, or going below, the contract price, when the time for delivery arrived. This being so, we are of the opinion his case is not covered by the statute. He testified on this head as follows:

"*Q.* Mr. Sloop, what kind of a contract was that? *A.* He wanted ten thousand bushels of number 2 corn delivered at Queen City in January, 1895.

"*Q.* I know; but what kind of a contract was it? What was the intention now? *A.* My intention was like this: If I could buy the corn there, I would buy it; if I couldn't, I would settle it. It was my option to do as I pleased.

"*Q.* Now, what was your intention in making this contract? *A.* If I could buy the corn cheap, I would buy it; if I couldn't, I would pay the difference; in other words, it was my option to do either one I wanted.

"*Q.* If corn was above twenty-five cents in price, how was you going to settle it? *A.* With the difference in price.

"*Q.* Who was to get the difference if corn went above twenty-five cents? *A.* I would have had to pay it to them.

"*Q.* If corn went below twenty-five cents? *A.* They would have had to made it up.

"*Q.* Then did you ever have any fixed intention to deliver the corn? *A.* No, sir.

"Objected to.

"*By the court:* Did you have any intention to

deliver them the corn at that time? *A.* I intended, if corn was cheap, to buy it, and if not to pay the difference in money."

In the light of this statement by defendant, it can not be said that he was "without any intention of delivering" the corn. He had the express intention of delivering unless corn went beyond the contract price. But we need not look alone to the foregoing testimony of defendant to ascertain his intention. He knew that plaintiff expected the delivery of the corn and was not engaged in a mere game or bet on its future price, to be settled in money if the game went against him. There was no understanding that if corn went below the contract price it would not be received by plaintiff. The contrary was the fact. Plaintiff wanted the corn for use. Defendant says he intended to deliver it if it went below the contract price, and he certainly expected it would go below, else he would not have made the contract. The truth is, as ascertained from his own testimony, defendant intended to deliver the corn unless the (to him) unexpected happened, viz., an advance in corn. To his mind, nondelivery was a remote contingency.

The judgment will be reversed and the cause remanded. All concur.