B. R. BEALL, Plaintiff in Error, v. BOARD OF TRADE OF KANSAS CITY et al., Defendants in Error.

Kansas City Court of Appeals, June 3, 1912.

1. ARBITRATION: Filing Award: Judgment: Action on Award. Notwithstanding an arbitration may be had under the provisions of the statute, and notwithstanding the award is not filed with the circuit court in the time required in order that it may be made a judgment of that court, yet it remains a valid arbitration and an independent action may be maintained on the award.

2. ————: ————: Gambling: Future Delivery: Intention. If it be conceded that an arbitration cannot be had on a claim arising out of a gambling transaction such as an option deal, yet where the evidence merely shows a transaction for the purchase of grain to be delivered in the future, without it appearing that there was no intention to deliver or to receive, it is not illegal and a claim thereon may be arbitrated.

3. ————: ————: Speculation: Intention. It is not all purchases on future deliveries, even though for speculation and the commodity is not on hand at the time, that the law condemns. There must be no intention to deliver.

4. ————: ————: ————: Promise to Pay Debt of Another: Original Promise. Where a corporation in embarrassed circumstances seeks a settlement of its debts by paying a part and one creditor refuses to settle unless the president of the corporation, individually, agrees to pay him the balance, and the president makes the promise, and the creditor thereupon settles and gives up his claim on the corporation, the promise of the president is not a promise to pay the debt of another, but is a promise to pay his own debt, and the Statute of Frauds has no application.

5. ————: ————: ————: Board of Trade: Members: Controversy: Adjustment. A and B were members of a board of trade, an unincorporated voluntary association. A corporation of which B was a member became indebted to the corporation of which A was a member. B's corporation was financially embarrassed and offered A's corporation thirty cents on the dollar in full settlement. The latter agreed to accept if B, individually, would agree to pay the balance. B promised to do so and A's corporation then accepted thirty per cent of its claim in full payment. B afterwards denied the agreement. *Held*, that this was a proper controversy for arbitration, and that an award in favor of A's corporation was binding.

Error to Jackson Circuit Court.—*Hon. W. O. Thomas,* Judge.

AFFIRMED.

*McCune, Harding, Brown & Murphy* and *E. C. Fletcher* for plaintiff in error.

(1) This was a statutory arbitration. The arbitration agreement was in writing, and provided that it should be carried out in conformity with the statute relating to arbitrations. Tucker v. Allen, 47 Mo. 490; Cochran v. Bartle, 91 Mo. 644; Valle v. Company, 37 Mo. 451; 2 Am. and Eng. Ency. Law (2 Ed.), 541; Erie v. Bent, 39 Fed. 409; Williams v. Watton, 9 Cal. 142; Deerfield v. Arms, 20 Pick. 480, 32 Am. Dec. 228; Holridge v. Stowell, 39 Minn. 360; Winne v. Edderkin, 1 Chan. 219, 52 Am. Dec. 159; Allen v. Chase, 3 Wis. 249; Pierce v. Kirby, 21 Wis. 125. (2) This arbitration is void, for the reason that it was not confirmed within one year from the date of its rendition. In re Taylor, 9 Mo. App. 538; R. S. 1909, secs. 875, 876, 881-2-5-6; 2 Am. and Eng. Ency. Law, 731; Anderson v. Anderson, 65 Ind. 196; Field v. Bissell, 36 Me. 593; Willingham v. Herrell, 36 Ala. 583; Bent v. Erie, 144 Mass. 165; Russell v. Clark, 60 Wis. 284.

*Frank Hagerman* and *Kimbrough Stone* for defendants in error.

(1) (a) The contention that the arbitration was statutory. Searles v. Lum, 81 Mo. App. 607; Triplett v. Sims, 89 Mo. App. 329; Williams v. Perkins, 83 Mo. 379; Osborn Co. v. Blanton, 34 S. E. (Ga.) 306; Unterrainer v. Seelig, 13 S. D. 152. (b) Failure to confirm the award. Hamlin v. Duke, 28 Mo. 166; Valle v. Railroad, 37 Mo. 445; Tucker v. Allen, 47 Mo. 488; Hotel Assn. v. Parker, 58 Mo. 327; Morse on Arbitration and Award, ch. 22, pp. 574, 575 and 576; R. S. 1909, sec. 891; Bowen v. Lazalere, 44 Mo. 383; Railroad

v. Calkins, 90 Mo. 542. (3) The arbitration was not compulsory. Board of Trade v. Nelson, 44 N. E. (Ill.) 743; Pacard v. Waite, 218 Ill. 138, 75 N. E. 779; Evans v. Chamber of Commerce, 91 N. W. (Minn.) 8. (a) As to option dealing. Mitchell v. Curran, 1 Mo. App. 463; Byrd v. Adem, 9 Ala. 755; Davis v. Went-67; Pierce v. Pierce, 60 N. H. 355; 2 Am. and Eng. Ency. Law 564. (b) As to the Statute of Frauds. Beall's promise not within statute. 29 Am. and Eng. Ency. Law, 912; Cross v. Richardson, 30 Vt. 648; Underwood v. Lovelace, 61 Ala. 155; Carlisle v. Campbell, 76 Ala. 247; Jolley v. Walker, 26 Ala. 690; Cole v. Justice, 8 Ala. 793.

ELLISON, J.—The defendant, Board of Trade of Kansas City, Mo., is an unincorporated voluntary association. Prior to 1905, plaintiff was a member of the association and he was likewise a member of and president of a corporation known as the Beall Grain Company. In that year he was suspended by the directors of the Board of Trade. Afterwards there was a sale, through the Board of Trade, of his membership certificate for the sum of $2655, and $500 of this amount was retained by the board as a fee for the transfer to the purchaser, who was elected a member, and the balance of $2155 was deposited with the secretary of the board of directors of the Board of Trade. It appears that the cause of Beall's suspension, and really of the sale of his membership in the Board of Trade, was a difficulty or dispute which arose between him and the Adams Grain Company as to an indebtedness to the latter from the Beall Grain Company which Adams, also a member of the Board of Trade, claimed Beall had assumed individually. This dispute was finally arbitrated before arbitrators selected by and under the regulations of the Board of Trade. The result of the arbitration was in favor of Adams. It further appears that the Board of Trade was about

to appropriate a part of the proceeds of the sale of plaintiff's membership to the payment of the arbitration award in favor of Adams Grain Company.

Plaintiff thereupon brought this action in equity, whereby he seeks, in the first count of his petition, to annul and set aside the award of the arbitrators, and in the second count he asks a judgment against the Board of Trade for $2155, the sum remaining in its hands from the sale of his membership after taking out the transfer fee of $500, as above mentioned. The Adams Grain Company intervened, claiming the money awarded to it by the arbitrators. There were also two other intervenors, but as this controversy is largely over the Adams claim, it will be unnecessary to refer further to them. The point insisted upon by plaintiff is that the award was void for the reason that the claim upon which it was based was illegal and not a subject of arbitration.

In order to become a member of the Board of Trade, it was necessary that each applicant should sign a contract of membership, pledging himself to obey and abide by the constitution, rules and regulations of the board. Among these rules was one providing for the arbitration and settlement of all disputes between members; the arbitration to be had before the regularly appointed board of arbitrators consisting of five members of the Board of Trade, with the right of appeal to five other members, constituting a "committee of appeals." Another rule empowered the board of arbitration to determine what claims were subject to arbitration. Another rule provided for the trial, and punishment by suspension, expulsion, etc., for failing to comply with the award of the arbitrators.

Stated in a general way, the claim of the Adams Grain Company against plaintiff arose as follows: The Beal Company was so incumbered with debts it could not pay out. The creditors, except the Adams

Company, agreed to settle for thirty cents on the dollar, and that company proposed to settle for that per cent and Beall's individual obligation to pay the balance. This was done, and the Beall Grain Company thereupon was released.

Afterwards it developed that Beall denied making the agreement individually to pay the balance in consideration of Adams releasing his company. Adams then proposed an arbitration as provided by the rules of the Board of Trade, and Beall refused. Adams then took proper steps for an order to arbitrate and the order was made. Beall then acquiesced, and both signed arbitration articles, whereby they agreed to submit the Adams claim, and that each would faithfully perform what was required by the award, and pay whatever sum of money should be awarded; and that they would abide by all by-laws, rules and regulations of the Board of Trade in reference to arbitrations. It was provided in said articles that if the award was made in writing it "may be entered on the records of the circuit court and that judgment may be had thereon in accordance with the terms thereof, and in pursuance of the provisions of the statute law of the state in cases of arbitration under said statute."

An arbitration was had, each party appearing with witnesses and no objection made by plaintiff to the right to arbitrate. The award being for Adams, plaintiff took an appeal to the appeal committee, where the award was affirmed. Plaintiff failed to pay it and Adams notified the board of directors of the Board of Trade, which body ordered him to pay. Still he failed, when Adams asked that he be disciplined for his refusal. Plaintiff wrote to the secretary of the board, asking that the directors defer any action "for one week with a view to bringing about some kind of an adjustment of the matter in the meantime." Action was postponed, but nothing was accomplished, when

he wrote the board the following letter: "I have used every effort to make a settlement with Mr. Adams for his claim against me, but have been unable to do so. I am financially unable to pay this claim at this time, but have offered to give Mr. Adams my note, payable $100 monthly, at six per cent interest, and, if my finances permit, I shall be happy to pay this claim as much sooner as possible. This is the very best I can do at this time, as all the collateral I have is tied up, and I trust that this will be satisfactory to your honorable board. Mr. R. T. Morrison, one of your associates, can testify as to the correctness of my financial condition." He was thereafter suspended by unanimous vote.

Under the rules of the Board of Trade no sale or transfer of membership could be made unless assessments were paid, as well as a transfer fee of $500, and membership not impaired and there be "no outstanding unadjusted or unsettled claims or contracts held by members of the association." With a knowledge of these rules and that he owed an assessment, and that the Adams claim, then settled by arbitration, was not paid, as well as two others, he solicited the board to sell his membership and to keep the money for payment on "legal and just claims." The following is his letter addressed to the secretary, dated the 24th of August, 1905: "You are hereby authorized to solicit sealed bids for the membership in the Board of Trade standing in my name, to be sold to the highest bidder, the proceeds to be paid to the directors for the benefit of all legal and just claims that may be filed and properly established against it."

In addition to this, there was evidence tending to show that he asked the secretary of the board to secure the written consent of Adams and the others to the transfer. The directors authorized the transfer to a party who had made the purchase. On the same day, but after the transfer had been made, plaintiff

notified the directors not to pay the Adams claim, and on the same day instituted the present action, it being claimed by him, as already stated, that it was not a demand which could be legally arbitrated.

Plaintiff claims the arbitration was a statutory proceeding, and not having been filed in the circuit court for confirmation, it was void. The statute on the subject of arbitration provides for judgment in the circuit court on an award after it has been filed for confirmation by that court, and that a motion for confirmation is not to be entertained after "one year from the publication of the award." [Sec. 876, R. S. 1909.]

But in our opinion even though the arbitration be considered a statutory one, in so far as that if it be not filed and confirmed in the circuit court within one year of its publication, no judgment will be rendered thereon in that court, yet it remains a special arbitration or settlement of a controversy between two members of the Board of Trade, and establishes the status of the one found against as a debtor to the other, and his consequent duty to pay. The fact that the successful party to an award does not file it in the circuit court, does not destroy it as an award, but only deprives him of that mode of enforcement. The award, itself, is a subsisting, substantial thing upon which an action may be brought independent of the statute. The statute itself authorizes a separate remedy. [Sec. 891, R. S. 1909.] And our courts have recognized the right. [Valle v. Ry. Co., 37 Mo. 445; Tucker v. Allen, 47 Mo. 488.] And so it is in Morse on Arbitration, 574-576. That author says that where a submission provides that judgment "may be entered on the award," as ours does, "the successful party may nevertheless sue upon it, if he chooses." So the same is decided in Dickerson v. Tyner, 4 Blackf. 253; Burnside v. Whitney, 24 Barb. 632, affirmed, 21 N. Y. 148.

This view disposes of the first five points against

the arbitration. But in addition, it is insisted that the arbitration was illegal and the award void, for the reason that the debt claimed by Adams arose from an unlawful transaction, viz., an option deal in grain, whereby plaintiff came to owe the Adams Company for his loss in such deal. This claim seems to be an afterthought. It is not mentioned in the pleading. The illegality set out in the pleading is that the claim was void in that it was founded on a verbal promise to pay the debt of another, and was therefore non-enforcible under the Statute of Frauds. It was not referred to in the evidence except in a few words at the close, and then failed in proof. Adams was asked on cross-examination if the indebtedness from plaintiff did not grow out of an option deal, and he answered, no, that it was a bona fide transaction, and no option in it. He conceded it arose from the sale of grain for future delivery, but was a real transaction.

Though plaintiff had testified in chief, at length, and made no reference or claim that the debt was illegal because of growing out of option deals, he was called in rebuttal and stated that "it grew out of some trades in grain for future delivery, or option trades." And that dealing in futures was commonly known as dealing in options. Then, when asked by the court to explain what he meant by "dealing in futures," said he meant "the purchase and sale for future delivery, commonly known by the trade as option dealing, or speculating on the market. For instance, you buy wheat for next May delivery, the man that buys it hopes to see the market go up, so he will make, and if it goes down he loses; that is all." He further said these transactions were "speculation in grain." We do not regard this evidence as showing an unlawful transaction. The statement by plaintiff that the debt grew out of a transaction in grain for future delivery does not show anything unlawful; for there is no impro-

priety in buying for future delivery, even though the seller has not the commodity on hand at the date of the contract. All speculation is not made unlawful by the statute. It is only transactions where no delivery or receipt in good faith is intended or contemplated, that the statute condemns it as gambling. [Connor v. Black, 119 Mo. 126; Deierling v. Sloop, 67 Mo. App. 446; Lane v. Logan Grain Co., 105 Mo. App. 215.] The testimony given by Adams was that it was a genuine transaction and not gambling; and while plaintiff stated, in words, that it was an option deal, that was a mere conclusion of his. For, in his explanation given to the court, he does not state facts making it unlawful. He says it was a purchase and sale for future delivery, and illustrates as we have above quoted. He does not say that no delivery by the one and receipt by the other was expected or intended.

Conceding (but by no means deciding) that a claim which could be avoided under the Statute of Frauds, is of such a class as not to be legally the subject of arbitration, the concession will not aid plaintiff, for the reason that the Adams claim was not a promise to pay the debt of another. The debt was originally that of a corporation of which plaintiff was president and stockholder, and Adams agreed to release the corporation from the whole debt upon the payment of thirty per cent of it, if plaintiff, individually, would assume the remaining seventy per cent. This was done, and the balance of the total sum thereby became plaintiff's obligation, and his promise was therefore a promise to pay his own debt. [Cross v. Richardson, 96 N. Y. 641; 29 Am. and Eng. Ency. Law, 912.]

It is true, as we said in Farmer v. Board of Trade, 78 Mo. App. 557, that an association like this, "though voluntary, cannot violate the law of the land. It cannot transcend the limits of natural justice, or the public policy of the state;" but we have not discovered in

the record where the defendant has fallen within these prohibitions.

Suggestion is made in plaintiff's statement, though not followed in his points and authorities, that the arbitrators gave weight to improper evidence to establish plaintiff's promise to pay his corporation's debt. This evidence was a written memorandum made by Adams at the time, as to what plaintiff agreed to do. It is, however, familiar law in matters of arbitration, that a mistake in the admission of evidence which would have been rejected in a court of law, will not vitiate an award. We do not mean to say the memorandum was improper evidence; for we see no reason why it was not competent in support of the memory of the witness who made it.

We have thus disposed of all substantial complaint against the judgment; and think it clear that the award in Adams' favor is valid and that it should be paid by the Board of Trade out of the money in its hands. We have not overlooked the charge of fraud in the arbitration, made in the pleadings filed by plaintiff. But have found that the record contains no evidence to sustain the charge.

After a thorough examination, we have not found anything which would justify our interference with the judgment, and it is accordingly affirmed. All concur.