965 P.2d 142

**Richard M. KRYSTOFF and Mayumi L. Krystoff, Plaintiffs–Appellants,**

**v.**

**KALAMA LAND CO., LTD., Defendant–Appellee.**

**No. 20557.**

Intermediate Court of Appeals of Hawai'i.

Aug. 25, 1998.

Certiorari Denied Sept. 16, 1998.

Richard M. Krystoff and Mayumi L. Krystoff, Plaintiffs-Appellants, *pro se*, on the brief.

Rosemary T. Fazio, Jonathan H. Steiner, and Keith M. Yonamine (Ashford & Wriston, of counsel), Honolulu, on the brief for Defendant-Appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

WATANABE, Judge.

The major issue[1] raised in this appeal from a declaratory judgment action brought

---

1. Plaintiffs–Appellants Richard M. Krystoff and Mayumi L. Krystoff (collectively, the Krystoffs) also contend that (1) the First Circuit Court (circuit court) erred in granting the motion of Defendant–Appellee Kalama Land Co., Ltd. (Kalama) "to dismiss [the Krystoffs'] Complaint, or Alternatively for Clarification of Order and for Order of Payment of Interim Rent" (motion to dismiss) because Kalama's motion was based largely on legal argument which should have been asserted in Kalama's original motion to dismiss; and (2) the circuit court erred in denying the Krystoffs' motion for leave to amend their complaint. We conclude that there is no merit to either contention.

As to the Krystoffs' first contention, our discussion in the body of this opinion indicates that the circuit court correctly reconsidered its earlier refusal to dismiss the Krystoffs' complaint. As to

by Plaintiffs–Appellants Richard M. Krystoff and Mayumi L. Krystoff (collectively, the Krystoffs), proceeding pro se, is whether Defendant–Appellee Kalama Land Co., Ltd. (Kalama) was entitled to enforce a lease rent arbitration award even though it failed to confirm the award in court within one year of the date of award, as permitted by Hawai'i Revised Statutes (HRS) § 658–8 (1993).

We agree with the First Circuit Court (circuit court) that the arbitration award was enforceable. Accordingly, we affirm the judgment and orders of the circuit court from which the Krystoffs appeal.

## BACKGROUND

### A. The Lease Rent Negotiations and Arbitration

Kalama is the fee simple owner of land located at 3654–C Nu'uanu Pali Drive (the Property). Pursuant to a lease dated May 9, 1956 (the Lease), Kalama leased the Property to Alfred Alphonse Yee and Janice Ching Yee (collectively, the Yees) for a term of fifty-five (55) years. Under the Lease, the Yees agreed to pay for the Property a net annual rent of $300 per annum for the first twenty-five years of the Lease and

> for and during the remaining thirty years of said term, such net annual rent as shall be mutually agreed upon by the Lessor and the Lessee, or in the event of failure to reach an agreement prior to ninety (90) days before the end of the first twenty-five[-]year period, such net annual rental as shall be determined by arbitration as hereinafter provided, said rent to be payable in lawful money of the United States of America at the office of the Lessor without notice or demand, semi-annually in advance on the first day of February and August of each and every year during the term hereby demised.

The Lease was subsequently assigned by the Yees to Scott Cree Brainard and Ruth Ann Brainard (collectively, the Brainards). On December 4, 1967, Kalama and the Brainards entered into an Amendment of Lease. The Amendment of Lease stated that the duration of the Lease would be for a term of "fifty-five (55) years commencing with the first day of May, 1956" and that the Brainards would pay

> [t]he sum of THREE HUNDRED DOLLARS ($300.00) per annum for the period commencing from the first day of May, 1956 and ending the 31st day of July, 1967; the sum of FOUR HUNDRED NINETY–FIVE DOLLARS ($495.00) per annum for the period of twenty-five (25) years from August 1, 1967, and for and during the remaining term, such net annual rental as shall be mutually agreed upon by the Lessor and the Lessee, or in the event of failure to reach an agreement prior to ninety (90) days before the end of the said twenty-five[-]year period, such net annual rental as shall be determined by arbitration as hereinafter provided[.]

On September 1, 1987, the Lease, as amended (Amended Lease), was assigned to the Krystoffs, and on September 8, 1987, Kalama consented to the assignment. Under the assigned Amended Lease, the Krystoffs were obligated to pay an annual lease rent amount of $495 (old rent) until August 1, 1992 and thereafter, a new annual lease rent (new rent) to be renegotiated by the parties. In the event that the parties could not agree on the new rent, the Amended Lease contained an arbitration clause requiring the appointment of an arbitrator to decide the new rent.

In 1975, the Hawai'i legislature enacted the Hawai'i Lease Rent Renegotiation Relief Act (the Act), Act 185, 1975 Haw. Sess. Laws 419,[2] now codified in HRS chapter 519. In

---

the second contention, the record on appeal indicates that the Krystoffs orally proposed that they be allowed to amend their complaint *if* the circuit court were inclined to grant Kalama's motion to dismiss. Because the circuit court denied Kalama's motion to dismiss, it never ruled on the Krystoffs' alternative motion. Moreover, when the circuit court reconsidered its initial denial of

Kalama's motion to dismiss, the Krystoffs never sought leave to file an amended complaint.

2. The Hawai'i Lease Rent Renegotiation Relief Act (the Act) grew out of what the Hawai'i legislature considered to be a "social emergency"— the fact that many homeowners who had built their homes on land leased from private landowners at a nominal annual lease rent were in jeopardy of losing their homes because the land-

relevant part, the Act provided that if the parties to a long-term residential ground lease could not agree on a new rental amount upon renegotiation, the new rent would be established through arbitration by the Hawaiʻi Housing Finance and Development Corporation (HFDC) or its designee.

**Residential leases of real property.** (a) All leases as defined by section 516–1,[3] of residential lots, as defined by section 516–1,[4] existing on June 2, 1975, or entered into thereafter, which provide for reopening of the contract for renegotiation of lease rent terms shall in the case of leases after June 2, 1975, provide the following, or in case of leases existing on June 2, 1975, shall be construed in conformity with the following:

\* \* \*

(b) In the event the parties to a lease are unable to achieve an agreement under any reopening provision, [HFDC] or its designee shall arbitrate, and its findings shall be binding and conclusive on both parties. . . .

\* \* \*

HRS § 519–2 (1993) (footnotes added).

In 1992, when the period for the Krystoffs' payment of the old rent had expired, the parties tried, but failed, to come to an agreement on a new rent for the Property. Consequently, on or about August 19, 1993, Kalama invoked the arbitration process set forth in HRS § 519–2. On July 25, 1994, the parties entered into a "Contract for Arbitration Services by HFDC Designee" (arbitration contract), agreeing that Raymond A. Lesher, MAI, (Lesher), acting as HFDC's designee,

shall determine and make an award on the lease rent payable to [Kalama] for the [P]roperty identified in the lease documents attached hereto . . . in compliance with Section 519–2, HRS, as well as the applicable provisions of Chapter 6–381, Hawaii [Hawaiʻi] Administrative Rules (hereinafter "HAR"), . . . . In the capacity of HFDC's designee, [Lesher's] award shall be consistent with Chapter 519, HRS, and Chapter 6–381, HAR.

Paragraph 4 of the arbitration contract, which articulated the procedure under which the arbitration was to be conducted, stated, in relevant part, as follows:

In addition to the provisions of Chapter 519, HRS, Chapter 658, HRS, and Chapter 6–381, HAR, [Lesher] shall also be guided by the "Real Estate Valuation Arbitration Rules" of the American Arbitration Association, . . ., in conducting the arbitration proceedings.

Moreover, Paragraph 6, entitled "Award," of the arbitration contract required that "[t]he award shall be prepared and delivered in compliance with Section 658–8, HRS."

On December 21, 1994, after conducting hearings and evaluating the evidence presented to him, Lesher issued an arbitration award, determining that "the net annual rental payable for and during the remaining term of the Lease, which remaining term commenced August 1, 1992, shall be $12,000,-000 [sic] Twelve Thousand Dollars" (Arbitration Award).

During the pendency of the arbitration, the Krystoffs had continued to pay the old rent of $495 per year. Because the Krystoffs believed that the new annual rent of $12,000 "rendered [their] leasehold interest in the [P]roperty practically worthless[,]" they did

owners were imposing "staggering increases in annual lease rentals" to extend the leases. Act 185, § 1, 1975 Haw. Sess. Laws at 420. To stabilize the situation, the Act provided a process for renegotiating annual ground lease rents.

**3.** Hawaiʻi Revised Statutes (HRS) § 516–1 (1993) defines a "lease" as

a conveyance of land or an interest in land, by a fee simple owner as lessor, or by a lessee or sublessee as sublessor, to any person, in consideration of a return of rent or other recompense, for a term, measured from the initial

date of the conveyance, twenty years or more (including any periods for which the lease may be extended or renewed at the option of the lessee).

**4.** HRS § 516–1 defines the term "residential lot" as "a parcel of land, two acres or less in size, which is used or occupied or is developed, devoted, intended, or permitted to be used or occupied as a principal place of residence for one or two families."

not pay the new rental amount. However, Kalama, seemingly satisfied with the Arbitration Award, sought to enforce its provisions. Inasmuch as the Arbitration Award was retroactive to August 1, 1992, Kalama, by certified letter dated February 27, 1995, requested that the Krystoffs pay $40,858.33, which included the back rent owed as of February 1, 1995, as well as "attorney's fees and costs of $364.58" incurred by Kalama in connection with its attempts to get the Krystoffs to pay rent at the new rate.

### B.  *Foreclosure by Bank of America*

On February 28, 1995, Kalama's attorneys sent a letter to Bank of America, through its legal counsel, informing the bank, as successor mortgagee to two mortgages taken out by the Krystoffs and secured by the Property, that the Krystoffs were in default of their rent payments under the assigned Amended Lease. The letter further warned the bank that Kalama intended to terminate the assigned Amended Lease unless the Krystoffs paid the past due rent. In response, Bank of America paid Kalama the delinquent lease rent owed by the Krystoffs, interest at ten percent and attorney fees. The bank then initiated foreclosure proceedings against the Krystoffs in the circuit court.

During the foreclosure proceedings, the Krystoffs failed to appear. Consequently, a default judgment against them was entered and the circuit court granted Bank of America's motion for interlocutory decree of foreclosure and an order of sale of the Property. Judgment in favor of Bank of America was later entered, and on January 4, 1996, a public auction was conducted for sale of the Property. Bank of America was the highest bidder with a bid of $80,500.

Realizing that they were about to lose their property, the Krystoffs, on January 3, 1996, filed a motion to (1) set aside the entry of default, (2) set aside the findings of fact, conclusions of law, and order granting Bank of America's motion for summary judgment and interlocutory decree of foreclosure and order of sale, or (3) in the alternative, stay the foreclosure proceedings. Following a January 31, 1996 hearing on the motion, the circuit court, on March 7, 1996, entered its written order denying the Krystoffs' motion to set aside the entry of default but granting a stay of the proceedings upon the conditions that:

> a.  By February 12, 1996, [the Krystoffs] shall tender payment of an amount equal to the mortgage payment due on their two mortgages with [Bank of America]. [The Krystoffs] shall continue to tender their mortgage payments during the stay of this action.

> * * *

> c.  By February 12, 1996, [the Krystoffs] shall pay into a mutually acceptable account an amount equal to the total amount [the Krystoffs] believe should reasonably be due in lease rent to [Kalama]. [The Krystoffs] represented to the [c]ourt that they felt $3,600.00 per year was a reasonable amount as this was the amount they argued to [the arbitrator] . . . that should have been set for the lease rent. [The Krystoffs] shall continue to pay the reasonable rental amount into escrow as rent payments become due during the stay.

> * * *

> 3.  The stay shall expire upon the [c]ourt making a final determination, in an [sic] lawsuit between [the Krystoffs] and Kalama of the enforceability of the Arbitration Award . . . or upon this [c]ourt so ruling on a motion to lift the stay made by any party herein.

> * * *

On January 12, 1996, Bank of America filed a motion to confirm the foreclosure sale and for distribution of the proceeds for the deficiency judgment. After a hearing on this motion on April 4, 1996, the circuit court ordered:

> 2.  By April 15, 1996, [the Krystoffs] must deposit into the existing escrow account additional sums so that the amount deposited for lease rent reasonably due to [Kalama] equals $3,600.00 per year;

> 3.  By April 15, 1996, [the Krystoffs] must deposit into the existing escrow ac-

count additional sums which will bring the principal, interest, and insurance payments due to Bank of America . . . on [the Krystoffs'] two mortgages current; and

4. The filing of any motions [the Krystoffs] wish to bring in this matter does not stay the [c]ourt's ordering of the Krystoffs to make the escrow payments as set forth herein.

Following a continuance of hearing on April 18, 1996, the circuit court found that the Krystoffs had failed to satisfy the requirement that they deposit sufficient funds into an escrow account by April 15, 1996. Accordingly, the circuit court granted Bank of America's motion to confirm the foreclosure sale.

### C. *Challenge of the Arbitration Award*

The Krystoffs filed a complaint for declaratory judgment on February 5, 1996, seeking an order that the Arbitration Award was unenforceable because Kalama had not moved to confirm it within the one-year confirmation period set forth in HRS § 658–8. Although Kalama moved to dismiss the complaint, the circuit court denied Kalama's motion.

Kalama then moved for reconsideration, and this time, the circuit court granted the motion and entered summary judgment in Kalama's favor. The Krystoffs thereafter filed a Motion to Amend, Alter or for Relief from Declaratory Judgment, which the circuit court denied.

### DISCUSSION

The arbitration contract between the Krystoffs and Kalama provided that the arbitrator's award would be consistent with HRS chapter 519 and HAR chapter 6–381. HAR § 6–381–14, which is part of HAR chapter 6–381, requires that "[t]he arbitrator shall pursue the arbitration of the renegotiations in accordance with . . . chapter 658, HRS." HRS § 658–8 (1993), which is part of HRS

chapter 658, provides, in relevant part, that an arbitration award

shall be in writing and acknowledged or proved in like manner as a deed for the conveyance of real estate, and delivered to one of the parties or the party's attorney. . . . At any time within one year after the award is made and served, any party to the arbitration may apply to the circuit court specified in the agreement, or if none is specified, to the circuit court of the judicial circuit in which the arbitration was had, for an order confirming the award. Thereupon the court shall grant such an order, unless the award is vacated, modified, or corrected, as prescribed in sections 658–9 and 658–10.

The Krystoffs maintain that the Arbitration Award was unenforceable because it was never confirmed by Kalama within the one-year time period mandated by HRS § 658–8. The circuit court disagreed with the Krystoffs and held that the failure of Kalama to confirm the Arbitration Award did not preclude Kalama from pursuing other remedies, such as common law remedies, to enforce the award.[5]

The circuit court's interpretation of HRS § 658–8 presents a question of statutory construction which this court reviews *de novo*. *Maui County Council v. Thompson*, 84 Hawai'i 105, 106, 929 P.2d 1355, 1356 (1996). In addition, an appellate court's "foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And where the language of the statute is plain and unambiguous, [the appellate court's] only duty is to give effect to its plain and obvious meaning." *Id.*

Examining the circuit court's construction of HRS § 658–8 in accordance with the foregoing principles, we conclude, for the following reasons, that the circuit court was correct in holding that the statute did not preclude

---

5. In its order granting Kalama's motion for reconsideration of the order denying Kalama's motion to dismiss the Krystoffs' complaint, the circuit court found as follows:

4. The [c]ourt concludes that [HRS] Section 658–8 does not preclude other appropriate

remedies (even if there is no motion to confirm an arbitration award pursuant to [HRS] Section 658–8), such as enforcement of an arbitration award at common law.

Kalama from enforcing the Arbitration Award.

### 1.

■ First, HRS § 658–8 expressly provides that a party to an arbitration "may apply" for an order confirming an arbitration award. Since the language of HRS § 658–8 is clearly permissive, rather than mandatory, we conclude that no requirement exists that an arbitration award be confirmed to be enforceable. *Accord Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 151 (4th Cir.1993); *Kentucky River Mills v. Jackson*, 206 F.2d 111, 120 (6th Cir.1953); *Spearhead Constr. Corp. v. Bianco*, 39 Conn.App. 122, 665 A.2d 86, 91 (1995); *Jones v. John A. Johnson & Sons*, 129 N.Y.S.2d 479, 481 (N.Y.Sup. 1954).

It is telling that within HRS chapter 658, the mandatory "shall" is used in regards to the time limitation for a party's application to vacate, modify, or correct an arbitration award.[6] The "use of alternating permissive and mandatory language throughout [HRS chapter 658] indicates that [the Hawai'i legislature] was cognizant of the difference in meaning between 'may' and 'must' and intended that the term 'may' be construed as permissive." *Sverdrup*, 989 F.2d at 151.

### 2.

■ Second, although no Hawai'i case has addressed the question of whether an arbitration award may be enforced beyond the one-year period set forth in HRS § 658–8, other jurisdictions with statutory sections very similar to HRS § 658–8 have concluded that the failure of a party to confirm an arbitration award does not render the award unenforceable.

**6.** HRS § 658–11 (1993) states, in relevant part:

**Notice of motion to vacate, modify, or correct; stay.** Notice of a motion to vacate, modify, or correct an award, *shall* be served, in the manner prescribed for service of notice of a motion in an action, upon the adverse party or the adverse party's attorney, *within ten days after the award is made and served.*
(Emphases added).

In *Central Collection v. Gettes*, 321 Md. 671, 584 A.2d 689 (1991), for example, the State of Maryland failed to confirm an arbitration award for costs against a health care provider. The Maryland Court of Appeals, holding that such failure did not preclude a common law enforcement action on the award, explained:

> Confirmation is simply an expeditious procedure for reducing or converting the arbitration award to a judgment which can be enforced by judicial writ. . . .

> Before statutes or rules of court provided for confirmation, the procedure by which the party receiving a favorable award in arbitration could eventually obtain judicial enforcement of the award was more complex. Suit could be brought on the award against the party who lost the arbitration, seeking the amount awarded. Basically the action was in assumpsit.

> Absent a provision in the arbitration statute making the statutory confirmation provision the exclusive method for entering judgment based on the award, and, in voluntary arbitration, absent a similar provision in a contract between the parties to the arbitration, the common law cause of action based on the award is not extinguished or abrogated. Nothing in the [Maryland Health Care Malpractice Claims] Act prevents resort to the common law action.

*Id.* 584 A.2d at 696.

In *Spearhead*, the parties had entered into a contract which stated that any dispute that arose between the parties would be settled by binding arbitration. *Id.* 665 A.2d at 88. A dispute did in fact arise between the parties and arbitration followed. *Id.* After the arbitrator rendered his award, neither party sought to confirm or vacate the award within the time permitted by statute.[7] On appeal,

**7.** The relevant statute for confirmation of an arbitration award was Connecticut General Statutes § 52–417, which stated, in relevant part:
At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration *may* make application to the superior court for the judicial district [as specified in the statute]. The court or judge *shall* grant such an order confirming the award unless the

Bianco argued that because Spearhead Construction had not moved to confirm the award within the one-year period specified in the relevant statute, the award was now unenforceable.

Rejecting Bianco's argument, the Appellate Court of Connecticut agreed with the lower court that

> [t]here are no provisions contained in [the relevant statute] which require[d] that an application to confirm an arbitration award must be made. *In the absence of a motion to confirm the award, the parties would be left to their common law remedies.* Under our common law, prior to the statute providing for an application to confirm an award, an arbitration award was in the nature of a judgment and the remedy for a party to an arbitration was to bring an action on the award. 'An arbitration award, confirmed or not, has the preclusive effect regarding issues of law and fact litigated before and determined by the arbitration panel.'

*Id.* at 92 (citations omitted) (emphasis added).

In *Beall v. Board of Trade of Kansas City*, 164 Mo.App. 186, 148 S.W. 386 (1912), the plaintiff claimed that since an arbitration award had not been filed in the circuit court for confirmation within the statutory "one year from the publication of the award[,]" it was void. Disagreeing, the Missouri Court of Appeals said:

> [I]n our opinion, even though the arbitration be considered a statutory one in so far as that if it be not filed and confirmed in the circuit court within one year of its publication, no judgment will be rendered thereon in that court, yet it remains a special arbitration or settlement of a con-

troversy between two [parties], and establishes the status of the one found against as a debtor to the other, and his consequent duty to pay. The fact that the successful party to an award does not file it in the circuit court does not destroy it as an award, but only deprives him [or her] of that mode of enforcement. The award itself is a subsisting, substantial thing, upon which an action may be brought independent of the statute. The statute itself authorizes a separate remedy.

*Id.* 148 S.W. at 388.

Likewise, a New York supreme court has stated "the fact that the statutory time for enforcing a statutory award by the statutory method has expired does not bar the enforcement of the award by common-law remedies." *Jones* at 481. *See also Aurandt v. Hire,* 175 Cal.App.2d 758, 346 P.2d 800 (1959); *Sverdrup,* 989 F.2d 148 (4th Cir. 1993); *Kentucky River,* 206 F.2d 111 (6th Cir.1953).

### 3.

Finally, the legislative history of HRS chapter 658 indicates a legislative intent to expand, not restrict, the enforcement options available to a prevailing party in an arbitration award. Prior to 1925, the year in which the Hawai'i statutory scheme for conducting arbitration hearings was overhauled, the way to enforce an arbitration award was to, first, reduce the award to a judgment, and then, second, to execute on the judgment. 1859 Haw. Civ.Code, art. XXXVIII, §§ 934 and 935.[8] In 1925, the legislature amended the statutes regarding arbitration by adopting uniform legislation that closely mirrors HRS

---

award is vacated, modified or corrected as prescribed [by statute].
*Spearhead Constr. Corp. v. Bianco,* 39 Conn.App. 122, 665 A.2d 86, 88 n. 1 (1995) (emphases added).

8. 1859 Haw. Civ.Code, art. XXXVIII, §§ 934 and 935 provided as follows:
   SECTION 934. Upon the coming in of the award, either party may, after four days notice to the other party, move the police justice, or any justice of the court of record, as the case may be, to cause the award to be entered up as a judgment of court; and unless the other

party shall satisfy the justice, that the award has not been made in accordance with the terms of the submission, or that it has been made by collusion or fraud, [the justice] shall cause the same to be entered up as a judgment of court; but if the opposing party sustains his [or her] objections to the satisfaction of the justice, [the justice] shall declare the award null and void.
   SECTION 935. After such award has been entered up as a judgment of court, execution may be issued thereon as in other cases.

chapter 658 as it exists today. Act 276, 1925 Haw. Sess. Laws 394, 396.

In commenting on the 1925 amendments, the House Committee on Judiciary stated that "[t]he purpose of this bill is to make effective agreements between parties to submit to arbitration by providing that the award of the arbitrators shall be given the force of a judgment." Hse. Stand. Comm. Rep. No. 303 on House Bill No. 228, 1925 Haw. Sess. Laws 394.

In light of the foregoing purpose, it is instructive that HRS § 658-12 (1993), the successor to section 2935[9] of the 1925 act, provides:

> **Entry of judgment.** Upon the granting of an order, confirming, modifying, or correcting an award, the same shall be filed in the office of the clerk of the circuit court and this shall constitute the entry of judgment. An appeal may be taken from such judgment as hereinafter set forth.

Under the Hawai'i statutory framework, the entry of an arbitration confirmation order as a judgment has several ramifications.

For example, pursuant to HRS § 657-5 (1993), the statute of limitations for an action to enforce a judgment is ten years.

> **Domestic judgments and decrees.** Unless an extension is granted, every judgment and decree of any court of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered. No action shall be commenced after the expiration of ten years from the date a judgment or decree was rendered or extended.... A court shall not extend any judgment or decree beyond twenty years from the date of the original judgment or decree. No extension shall be granted without notice and a hearing.

In contrast, the general statute of limitations for enforcement of an arbitration award arrived at pursuant to contract is six years, as set forth in HRS § 657-1(1) (1993):

> § 657-1 **Six years.** The following actions shall be commenced within six years

next after the cause of action accrued, and not after:

> (1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court; . . . .

Additionally, as provided in HRS § 658-12, an appeal may be taken from an order of confirmation which has been entered as a judgment.

Furthermore, an arbitration confirmation order that has been entered as a judgment operates as a lien upon real property when a certified copy of the judgment is recorded in the bureau of conveyances, HRS § 636-3 (1993), and may be satisfied by writs of attachment or execution. HRS chapter 651.

### CONCLUSION

Based on the foregoing discussion, we affirm the (1) circuit court's October 17, 1996 "Order Granting [Kalama's] Motion for Reconsideration of Order Denying Motion to Dismiss Complaint, or Alternatively for Clarification of Order and for Order of Payment of Interim Rent, Filed on June 26, 1996"; and (2) Final Judgment, entered on February 11, 1997.

---

**9.** Section 2935 of Act 276, 1925 Haw. Sess. Laws 394, 397 provided:

> Entry of judgment. Upon the granting of an order, confirming, modifying or correcting an award, judgment may be entered in conformity therewith, but no exceptions shall be taken, but an appeal may be taken from such order or judgment as hereinafter set forth.