52 P.3d 823 (2002)
99 Hawai`i 53
Wayne C. METCALF, III in his capacity as Liquidator and Trustee of the PGMA Liquidating Trust, Plaintiff-Appellee/Cross-Appellant,
v.
VOLUNTARY EMPLOYEES' BENEFIT ASSOCIATION OF HAWAI`I, Defendant-Appellant/Cross-Appellee.
No. 23084.
Supreme Court of Hawai`i.
August 22, 2002.
*824 Paul A. Schraff and Eric K. Sakai (of Dwyer, Imanaka, Schraff, Kudo, Meyer & Fujimoto), on the briefs, Honolulu, for defendant-appellant/cross-appellee Voluntary Employees' Benefit Association of Hawai`i.
Bert T. Kobayashi, Jr., Lex R. Smith, and Ann C. Teranishi (of Kobayashi, Sugita & Goda), on the briefs, Honolulu, for plaintiff-appellee/cross-appellant Wayne C. Metcalf, III, in his capacity as Liquidator and Trustee of the PGMA Liquidating Trust.
MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ.; ACOBA, J., dissenting.
Opinion of the Court by MOON, C.J.
Defendant-appellant/cross-appellee Voluntary Employees' Benefit Association of Hawai`i (VEBAH) and plaintiff-appellee/cross-appellant State Insurance Commissioner Wayne C. Metcalf, III, [hereinafter, the Commissioner] appeal from the December 27, 1999 amended judgment of the Circuit Court of the First Circuit, the Honorable Kevin S.C. Chang presiding. VEBAH argues that the circuit court erred in: (1) dismissing VEBAH's counterclaims based upon provisions of Article 15 of the Insurance Code; and (2) concluding that VEBAH is liable for post-judgment interest. The Commissioner claims that the circuit court erred in: (1) refusing to consider his request for pre-judgment interest and (2) denying his request for attorneys' fees. We affirm in part and vacate in part the amended judgment of the circuit court and remand this case for further proceedings.

I. BACKGROUND

VEBAH entered into an agreement with Pacific Group Medical Association (PGMA), a *825 mutual benefit society organized and licensed under Hawai`i Revised Statutes (HRS) chapter 432[1] that was engaged in the business of insurance. Under the "Pacific Group Medical Association Voluntary Employees' Benefit Association of Hawai`i Master Agreement" [hereinafter, the PGMA/VEBAH Master Agreement] PGMA agreed to provide health benefits to VEBAH members in exchange for specified premiums. The agreement was effective from July 1, 1995, and VEBAH paid monthly premiums under the agreement from July 1995 through December 1996. For the months of January and February 1997, VEBAH paid only $500,000.00 of the premiums owed and withheld a total of $874,437.11,[2] allegedly due to complaints from VEBAH members over delayed payments of benefits. Effective March 1, 1997, VEBAH withdrew its members from PGMA and enrolled them in substitute plans.

A. The Special Proceeding Against PGMA

On March 11, 1997, the Commissioner initiated Special Proceeding No. 97-0135 in circuit court [hereinafter, Special Proceeding] to rehabilitate PGMA pursuant to Article 15 of the Insurance Code [hereinafter, Article 15], governing the supervision, rehabilitation, and liquidation of insurers.[3] On March 12, 1997, the court appointed the Commissioner to serve as the rehabilitator of PGMA.
During the Special Proceeding, VEBAH argued[4] that Article 15 did not apply to PGMA because it was a mutual benefit society. On September 26, 1997, the Commissioner filed a motion seeking a declaratory judgment that Article 15 applied to the proceedings against PGMA. VEBAH filed a memorandum in opposition to the Commissioner's motion and appeared at the October 15, 1997 hearing on the motion. The circuit court ruled that Article 15 applied to the Special Proceeding and ordered the liquidation of PGMA pursuant to HRS §§ 431:15-305[5] *826 and 431:15-307[6] (1993). The court appointed the Commissioner to serve as the liquidator of PGMA. A final order in the Special Proceeding was not filed until January 23, 2002, and a notice of appeal was filed by VEBAH on February 22, 2002.

B. The Commissioner's Suit Against VEBAH

On February 2, 1998, the Commissioner, in his capacity as the liquidator of PGMA, filed a complaint to compel VEBAH to turn over to him the premiums from January and February 1997 that were withheld. Count I of the complaint was based on HRS § 431:15-323 (1993), which provides that any person, "other than the insured, responsible for the payment of a premium shall be obligated to pay any unpaid collected premium held by such person at the time of the declaration of insolvency, whether earned or unearned, as shown on the records of the insurer." Count II was based upon an alleged breach of the PGMA/VEBAH Master Agreement.
On March 17, 1998, VEBAH filed an answer to the complaint and counterclaims against PGMA and the Commissioner, alleging: (1) breach of contract by PGMA; (2) breach of contract by the Commissioner; (3) misrepresentation by PGMA; (4) rescission; (5) setoff and recoupment; (6) negligence by the Commissioner; (7) aiding and abetting of PGMA's negligence, misrepresentation, and breach of contract by the Commissioner; and (8) a right to indemnity by and contribution from the Commissioner.
On July 8, 1998, upon motion by the Commissioner, the circuit court dismissed VEBAH's counterclaims. The court deferred to the determination from the Special Proceeding that Article 15 applied to PGMA based upon the principle of judicial comity and ruled that HRS § 431:15-319(b) (1993)[7] barred VEBAH's counterclaims. VEBAH appealed from the dismissal order; however, on October 22, 1998, this court dismissed VEBAH's appeal for lack of appellate jurisdiction.
On January 29, 1999, the Commissioner filed a motion for summary judgment on count I (his claim based on HRS § 431:15-323). On June 9, 1999, an order granting in part and denying in part the Commissioner's motion for summary judgment was filed. The order included: (1) judgment in favor of the Commissioner and against VEBAH in the amount of $874,437.11 plus post-judgment interest pursuant to HRS § 478-3 *827 (1993) (discussed infra); (2) an order for VEBAH to pay any and all PGMA premium money in VEBAH's possession and control; and (3) denial of the Commissioner's requests for pre-judgment interest and attorneys' fees on the ground that Article 15 does not provide for either. Thereafter, a final judgment as to count I was filed on August 27, 1999. The same day, count II, the breach of contract claim, was dismissed without prejudice by stipulation.
On September 1, 1999, VEBAH filed a motion requesting to deposit funds with the court, to otherwise stay enforcement of the judgment, and to alter or amend the judgment, or, in the alternative, to set the amount of a supersedeas bond. VEBAH's motion was granted in part, and, on October 4, 1999, the circuit court filed an order allowing VEBAH to deposit the funds with the court in lieu of a bond, but ruled that VEBAH remained liable for post-judgment interest until the funds were paid to the Commissioner.
An amended final judgment was filed on December 27, 1999. VEBAH filed its notice of appeal on January 11, 2000, and the Commissioner filed his notice of cross-appeal on January 25, 2000.

II. STANDARDS OF REVIEW

A. Conclusions of Law

We review the trial court's conclusions of law de novo under the right/wrong standard. Under this standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it. Thus, a conclusion of law is not binding upon the appellate court and is freely reviewable for its correctness.
Fujimoto v. Au, 95 Hawai`i 116, 137, 19 P.3d 699, 720 (2001) (citations omitted) (internal quotation marks, brackets, and ellipsis points omitted).

B. Statutory Interpretation

"`The interpretation of a statute is a question of law reviewable de novo.'" Beneficial Hawai`i, Inc. v. Kida, 96 Hawai`i 289, 305, 30 P.3d 895, 911 (2001) (citations omitted).

C. Awards of Interest

This court reviews rulings on interest pursuant to HRS §§ 478-3 and 636-16 (1993) for abuse of discretion. See Sussel v. Civil Serv. Comm'n., 74 Haw. 599, 619, 851 P.2d 311, 321 (1993).
The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.
Molinar v. Schweizer, 95 Hawai`i 331, 335, 22 P.3d 978, 982 (2001) (quoting Canalez v. Bob's Appliance, 89 Hawai`i 292, 299, 972 P.2d 295, 302 (1999)).

III. DISCUSSION

A. VEBAH's Claims on Appeal

VEBAH argues that the circuit court erred in dismissing its counterclaims based upon HRS § 431:15-319(b) because: (1) it improperly applied the principle of judicial comity; and (2) Article 15 did not apply to PGMA insofar as it was a mutual benefit society. Thus, in effect, VEBAH directly attacks the circuit court's determination in this case and collaterally attacks the court's determination in the Special Proceeding that Article 15 applied to PGMA. VEBAH also argues that the award of post-judgment interest was improper because: (1) HRS § 478-3 was inapplicable to the monetary award of $874,437.11; and (2) the award of interest amounted to an illegal and excessive penalty.

1. Denial of VEBAH's Counterclaims Based on Article 15

a. judicial comity

VEBAH argues that the circuit court erred in ruling that Article 15 applied to PGMA based on the principle of judicial comity. Comity is "`not a rule of law, but one of practice, convenience, and expediency.' It does not of its own force compel a particular course of action. Rather, it is an expression of one state's entirely voluntarily decision to defer to the policy of another." *828 Columbia Falls Aluminum Co. v. Hindin/Owne/Engelke, Inc., 224 Mont. 202, 728 P.2d 1342, 1345 (1986), reh'g denied, 224 Mont. 202, 728 P.2d 1342 (1987) (quoting Simmons v. State, 206 Mont. 264, 670 P.2d 1372, 1385 (1983) (citations omitted)). This court has explained that, "[i]n the legal realm, comity is more commonly defined `as the principle that courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state or jurisdiction out of deference and mutual respect.'" Chun v. Board of Trustees of the Employees' Retirement Sys., 92 Hawai`i 432, 446, 992 P.2d 127, 141 (2000) (quoting Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians, 229 Wis.2d 581, 599 N.W.2d 911, 917 n. 3 (Wis.Ct.App.1999)) (brackets omitted). In Chun, the plaintiffs argued that the circuit court violated the principle of comity when it refused to apply the percentage method of determining attorneys' fees in a class action lawsuit used by another circuit court in an unrelated proceeding. Chun, 92 Hawai`i at 446, 992 P.2d at 141. This court disagreed, noting that the plaintiffs "fail[ed] to provide, and we have been unable to unearth, any support for their contention that the principle of comity necessarily applies to the decisions of trial courts within the same state regarding entirely different matters." Id. at 446 n. 9, 992 P.2d at 141 n. 9 (emphasis in original).
In the present case, the Special Proceeding and the Commissioner's suit against VEBAH were both circuit court proceedings within the same state, and neither had precedential value over the other. Thus, as in Chun, the principle of comity is inapplicable. Additionally, as VEBAH points out, the related doctrines of law of the case and collateral estoppel also do not apply because: (1) the Special Proceeding and the Commissioner's suit against VEBAH were separate cases; and (2) no final judgment had been entered in the Special Proceeding when the court in the Commissioner's suit applied the determination that Article 15 applied to VEBAH. Therefore, we agree with VEBAH's first point of error and hold that the circuit court erred in applying the determination from the Special Proceeding that Article 15 applied to PGMA based upon the principle of judicial comity. Consequently, we turn to VEBAH's second point of error, that is, whether Article 15 applies to mutual benefit societies.

b. application of Article 15 to mutual benefit societies

VEBAH argues that provisions within the Insurance Code (HRS chapter 431) and the chapter governing mutual benefit societies (HRS chapter 432) indicate that Article 15 did not apply to PGMA, a mutual benefit society. The Commissioner, however, also cites to statutory authority specifically allowing the application of Article 15 to mutual benefit societies. We, therefore, address the apparent discrepancies within the Insurance Code, as well as discrepancies between the Code and HRS chapter 432.
The starting point in statutory construction is to determine the legislative intent from the language of the statute itself.... And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool. This court may also consider the reason and the spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.
... A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable. The legislature is presumed not to intend an absurd result, and legislation will *829 be construed to avoid, if possible, inconsistency, contradiction, and illogicality.
Southern Foods Group, L.P. v. State, Dept. of Educ., 89 Hawai`i 443, 453-54, 974 P.2d 1033, 1043-44 (1999) (citations, internal quotation marks, brackets, and ellipsis points omitted).
HRS § 431:1-101 (1993) defines the scope of the Insurance Code and states:
No person shall transact a business of insurance in this State without complying with the applicable provisions of this code. Any person transacting a business of insurance under Chapter 432 [pertaining to mutual benefit societies] shall be subject to this code only to the extent provided in chapter 432.

(Emphases added).
HRS § 432:1-101 (1993) states in pertinent part:
The provisions of this article shall apply to mutual benefit societies as defined herein. Except as expressly provided in this article, mutual benefit societies shall be exempt from the provisions of the insurance code. No law enacted after July 1, 1988, shall apply to mutual benefit societies unless such societies are expressly designated therein.
(Emphases added). Based on the aforementioned statutes, VEBAH maintains that PGMA, as a mutual benefit society, is exempt from the provisions of the insurance code and that, therefore, Article 15 does not apply to PGMA. However, HRS § 431:15-102 (1993), defining the scope of Article 15, specifically states that "[t]he proceedings authorized by [Article 15] may be applied to ... all fraternal benefit societies and beneficial societies subject to chapter 432, Benefit Societies." Thus, there is an apparent conflict between HRS §§ 431:1-101 and 431:15-102.
We resolve the apparent conflict by examining HRS § 431:1-104 (1993), which directs that "[p]rovisions of this code relating to a particular class of insurance or a particular type of insurer or to a particular matter prevail over provisions relating to insurance in general or insurers in general or to such matter in general." Because HRS § 431:1-101 governs the applicability of the Insurance Code in general and HRS § 431:15-102 relates specifically to the applicability of Article 15, we, thus, apply HRS § 431:15-102, a statute governing the supervision, rehabilitation, and liquidation of insurers, over HRS § 431:1-101. Consequently, we resolve the apparent conflict in favor of applying the Insurance Code to mutual benefit societies.
However, as indicated supra, HRS § 432:1-101 appears to indicate that Article 15 is not applicable to mutual benefit societies. This court has noted that, "[w]here there is a `plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored.... [W]here the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." Wong v. Takeuchi, 88 Hawai`i 46, 53, 961 P.2d 611, 618 (quoting State v. Vallesteros, 84 Hawai`i 295, 303, 933 P.2d 632, 640 (1997)), reconsideration denied, 88 Hawai`i 46, 961 P.2d 611 (1998).
In the present case, both HRS § 432:1-101 and HRS § 431:15-102 concern the applicability of the Insurance Code to mutual benefit societies. As previously indicated, HRS § 432:1-101 governs the applicability of the Code generally, while HRS § 431:15-102 deals specifically with the application of Article 15. Thus, HRS § 431:15-102, the more specific statute, is favored over HRS § 432:1-101, the more general one.
Additionally, "[a] rational, sensible, and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable." Southern Foods Group, 89 Hawai`i at 453-54, 974 P.2d at 1043-44 (brackets omitted). A rational interpretation of the foregoing statutes is that HRS § 431:15-102 creates an exception to the general rule established by HRS § 432:1-101 that mutual benefit societies are typically exempt from provisions of the Insurance Code. Accepting VEBAH's contention that Article 15 does not apply to mutual benefit societies (e.g., PGMA) would necessarily require us to conclude that, by adopting HRS § 431:15-102, the legislature drafted language explicitly permitting Article 15 to be applied to mutual benefit societies while, at *830 the same time, intending exactly the opposite result by adopting HRS § 432:1-101. Such an interpretation is neither rational nor sensible.
Moreover, as noted supra, HRS § 431:15-102 expressly states that the provisions of Article 15 may be applied to mutual benefits societies. HRS § 431:15-101(c) (1993) instructs that the provisions of Article 15 "shall be liberally construed" to effect its purpose, which is
the protection of the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers, through:
(1) Early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures;
(2) Improved methods for rehabilitating insurers, involving the cooperation and management expertise of the insurance industry;
(3) Enhanced efficiency and economy of liquidation, through clarification of the law, to minimize legal uncertainty and litigation; [and]
(4) Equitable apportionment of any unavoidable loss[.]
HRS § 431:15-101(d) (1993). The Commissioner's interpretation of HRS § 431:15-102 provides the insureds, claimants, and creditors of mutual benefit societies with the same protections as those of insurance companies and is consistent with the liberal construction required by HRS § 431:15-101(c).
Based on the foregoing reasons, we hold that, when the Special Proceeding was initiated, Article 15 applied to mutual benefit societies and that the circuit court did not err in dismissing VEBAH's counterclaims based on its ruling that Article 15 applied to the liquidation of PGMA.[8]

2. Award of Post-Judgment Interest
VEBAH claims that the circuit court erroneously awarded interest because: (1) HRS § 431:15-323 allows for only "an injunctive, turnover order[] type of relief, not damages"; and (2) the court's award of post-judgment interest constituted an illegal and excessive penalty.
Initially, VEBAH's first argument is premised upon its unsupported proposition that "[i]t is incorrect and improper to attach an interest charge to an injunction." In the absence of express statutory authority governing the payment of interest in a specific type of claim, HRS § 478-3, governing the payment of interest in civil judgments generally, applies. Sussel, 74 Haw. at 618, 851 P.2d at 320. HRS § 478-3 provides that "[i]nterest at the rate of ten per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit." The court's June 9, 1999 order, which is the basis for its December 27, 1999 final judgment, includes a judgment awarding the Commissioner $874,437.11. Nothing in the language of HRS § 478-3 precludes an award of interest upon this judgment, even if it resulted from an "injunctive" type of relief. Moreover, the reasoning for allowing post-judgment relief on a damages award applies with equal force to the type of relief proposed by VEBAH. As VEBAH itself notes:
There is a well-established economic value for a "delay in spending": it is called "interest". If one foregoes the benefit of immediately spending a dollar, and simply delays spending that dollar until some future time, that delay is compensated by the payment of interest. In short, the interest on the deposited funds is, by definition, complete and total compensation for the "lost opportunity" of being able to spend the money sooner.
Where a judgment results in an award of money, the prevailing party is ordinarily entitled *831 to "total" compensation. Under these circumstances, HRS § 478-3 is applicable.
Regarding its second claim that the award of interest amounted to an illegal and excessive penalty, VEBAH argues that, even if interest was appropriate, the statutory rate of ten per cent was unwarranted in the present case. However, VEBAH points to no evidence and cites no authority indicating that the circuit court abused its discretion by awarding post-judgment interest at the statutory rate of ten per cent. Therefore, we hold that the circuit court did not err in awarding post-judgment interest pursuant to HRS § 478-3.

B. The Commissioner's Cross-Claims on Appeal

The Commissioner presents two claims in his cross-appeal: (1) the circuit court erred in denying his request for pre-judgment interest; and (2) the court erred in denying his request for attorneys' fees.

1. Denial of Pre-Judgment Interest
The Commissioner claims that the circuit erred in denying pre-judgment interest on the basis that it is not provided for by Article 15. Specifically, the circuit court ruled, "The [Commissioner's] requests for [pre-judgment] interest and attorneys' fees are DENIED on the ground that Article 15 of the Insurance Code does not provide for the allowance of pre-judgment interest or for attorneys' fees."
Pre-judgment interest is designed "to allow the court to designate the commencement date of interest in order to correct injustice when a judgment is delayed for a long period of time for any reason, including litigation delays." Schmidt v. Board of Directors of Ass'n of Apartment Owners of Marco Polo Apartments, 73 Haw. 526, 534, 836 P.2d 479, 483 (1992) (quoting Leibert v. Finance Factors, Ltd., 71 Haw. 285, 293, 788 P.2d 833-838 (1990)) (internal quotation marks omitted). "[T]he purpose of prejudgment interest is to discourage `recalcitrance and unwarranted delays in cases which should be more speedily resolved.'" Calleon v. Miyagi, 76 Hawai`i 310, 322, 876 P.2d 1278, 1290 (1994) (citation omitted). However,
it is clearly within the discretion of the circuit court to deny prejudgment interest where appropriate, for example, where: (1) the defendant's conduct did not cause any delay in the proceedings, see Amfac, Inc. [v. Waikiki Beachcomber Investment Co.], 74 Haw. [85], 137, 839 P.2d [10,] 36 [(1992)]; (2) the plaintiff himself has caused or contributed to the delay in bringing the action to trial, see Schmidt v. Board of Directors of the Ass'n of Apartment Owners of the Marco Polo Apartments, 73 Haw. 526, 534-35, 836 P.2d 479, 484 (1992); or (3) an extraordinary damage award has already adequately compensated the plaintiff, see Leibert v. Finance Factors, Ltd., 71 Haw. 285, 293, 788 P.2d 833, 838 (holding that it was an abuse of discretion for the circuit court to award prejudgment interest to a treble damages award), reconsideration denied, 71 Haw. 664, 833 P.2d 899 (1990).
Roxas v. Marcos, 89 Hawai`i 91, 153, 969 P.2d 1209, 1271 (1998), reconsideration denied, 89 Hawai`i 91, 969 P.2d 1209 (1999). The statutory basis for pre-judgment interest is HRS § 636-16 (1993), which provides that,
[i]n awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.
Under HRS § 636-16, courts in all civil cases have the discretion to award pre-judgment interest. Sussel, 74 Haw. at 618, 851 P.2d at 320 (citing McKeague v. Talbert, 3 Haw.App. 646, 658 P.2d 898 (1983)). As the Commissioner's suit against VEBAH was a civil case, nothing in the statute prohibits awarding pre-judgment interest. Accordingly, the circuit court based its ruling on an "erroneous view of the law" and, therefore, abused its discretion by failing to consider the Commissioner's request for pre-judgment interest. Accordingly, we vacate the circuit court's denial of pre-judgment interest and remand *832 this case for a determination whether an award of pre-judgment interest is appropriate. We express no opinion regarding the propriety of such an award.

2. Denial of Attorneys' Fees
The Commissioner claims that the circuit court erred in denying his request for attorneys' fees. "Ordinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement." Shanghai Inv. Co. v. Alteka Co., Ltd., 92 Hawai`i 482, 501, 993 P.2d 516, 535 (2000) (citations and internal quotation marks omitted). The Commissioner argues that count I of his complaint was "in the nature of assumpsit" because it was brought to obtain premium money collected by VEBAH pursuant to the PGMA/VEBAH Master Agreement. Therefore, the Commissioner argues that the circuit court should have awarded attorneys' fees pursuant to HRS § 604-14 (Supp.1998), which provides in pertinent part:
In all the courts, in all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]
This court has noted that "`assumpsit' is `a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations.'" Blair v. Ing, 96 Hawai`i 327, 332, 31 P.3d 184, 189 (2001) (quoting TSA Int'l. Ltd. v. Shimizu Corp., 92 Hawai`i 243, 264, 990 P.2d 713, 734 (1999)). Additionally,
[i]n ascertaining the nature of the proceeding on appeal, this court has looked to the essential character of the underlying action in the trial court. The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought. Where there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit.
Blair, 96 Hawai`i at 332, 31 P.3d at 189 (citations, internal quotation marks, and footnote omitted).
In the present case, the essential character of the suit against VEBAH was not in the nature of assumpsit. The basis of the Commissioner's action was HRS § 431:15-323. Under the facts and issues raised in the complaint, possession of premiums collected alone is determinative of the obligation to pay. Thus, contractual rights and obligations were not at issue in the case, and the typical contractual defenses were not available. The fact that there was an underlying contractual relationship between PGMA and VEBAH is not dispositive of this case. Therefore, we hold that proceedings under HRS § 431:15-323 are not in the nature of assumpsit and that the circuit court did not err in denying the Commissioner his attorneys' fees.

IV. CONCLUSION

Based upon the foregoing, we hold that the circuit court did not err in: (1) dismissing VEBAH's counterclaims based on its ruling that Article 15 applied to the liquidation of VEBAH; (2) awarding post-judgment interest pursuant to HRS § 478-3; and (3) denying the Commissioner's request for attorneys' fees. However, we hold that the circuit court erred in denying pre-judgment on the ground that Article 15 does not allow such an award. We, therefore, vacate this portion of the judgment and remand this case for further proceedings. On remand, we direct the circuit court to consider the Commissioner's request for pre-judgment interest in accordance with the principles outlined in Roxas v. Marcos, 89 Hawai`i 91, 153, 969 P.2d 1209, 1271 (1998).
Dissenting Opinion of ACOBA, J.
I respectfully dissent in the present case, because I disagree with the majority's rush to find a conflict between Hawai`i Revised Statutes (HRS) chapter 431, the insurance code, and HRS chapter 432, pertaining to, inter alia, mutual benefit societies. It is our judicial responsibility to construe statutes enacted by our legislature so as to avoid conflict where possible. Here, the majority has *833 determined that "there is an apparent conflict between HRS §§ 431:1-101 [(1993)] and 431:15-102 [(1993)]." Majority opinion at 59, 52 P.3d at 829.
In doing so, the majority sweeps too broadly in employing its power of statutory construction, applying rules of conflict where no conflict exists, because a reasonable construction would preserve the presumption of statutory validity. While under the obvious construction of HRS chapters 431 and 432, the proceeding below was questionable, at best, the parties did not raise the invalidity of the initial, separate proceeding. However, it is unclear whether the court exercised its discretion as to the applicability of article 15 of the insurance code, and, therefore, this case should be remanded.

I.
To briefly recap, Pacific Group Medical Association (PGMA), a mutual benefit society providing prepaid health care plans to employers and employee groups, and Defendant-Appellant/Cross-Appellee Volunteer Employees' Benefit Association of Hawai`i (VEBAH), another mutual benefit society, entered into a contract under which VEBAH would collect premiums from its members for PGMA health plans, and PGMA would provide these health plans. Beginning in September 1996, VEBAH began to receive complaints from its members about PGMA's payment of claims. After seeking explanations, VEBAH asked for assurances of PGMA's ability to perform and to pay claims. From mid-January through February 1997, VEBAH withheld payment to PGMA. When no assurances were forthcoming, VEBAH subsequently changed plans effective March 1, 1997.
On March 11, 1997, Plaintiff-Appellee/Cross-Appellant Wayne C. Metcalf, III, State Insurance Commissioner (the commissioner), initiated Special Proceeding No. 97-0135 (the Special Proceeding) to seize PGMA under HRS chapter 431. Subsequently, on April 21, 1997, the commissioner filed a "Motion for Approval of Agreement With the Queen's Health Systems [(Queen's)] and Related Relief," which requested the court to approve a transaction whereby Queen's would oversee the future operations of PGMA, assume certain of its debts, and pay a transfer fee to the commissioner as Rehabilitator. Under the transaction, substantially all of PGMA's assets would be transferred to a liquidating trust, which was to be liquidated under HRS chapter 431, the insurance code. At this time, VEBAH raised the question of the applicability of article 15 of HRS chapter 431. The question was deferred, and other actions associated with the Queen's agreement went forth. On September 26, 1997, the commissioner filed a motion seeking a declaratory judgment that article 15 applied to the proceeding against PGMA. Subsequently, in its order of December 9, 1997, the court determined that article 15 of the insurance code applied to the proceedings filed against VEBAH. All of these actions were made pursuant to the Special Proceeding, which is not at issue in this case.
In a separate action, the commissioner filed a claim against VEBAH for the moneys VEBAH withheld from PGMA for the months of January and February, pursuant to HRS § 431:15-323 (1993), which allows the commissioner to recover any premiums owed, either earned or unearned, at the time the insurer is declared insolvent. VEBAH counterclaimed, asserting, among other things, the setoffs which are at issue. Under HRS § 431:15-319(b) (1993), no setoff or counterclaim is allowed under conditions applicable here. Thus, if HRS § 431:15-319(b) applies, VEBAH may not counterclaim against the commissioner for moneys withheld from PGMA.
VEBAH and the commissioner disagree about the applicability of HRS § 431:15-319(b) to the premiums withheld by VEBAH from PGMA. The crux of this disagreement is the applicability of article 15 of the insurance code, of which HRS § 431:15-319(b) is one of the provisions, to mutual benefit societies, of which PGMA is one. VEBAH argues that article 15 of the insurance code is not applicable to PGMA, while the commissioner argues that article 15 is applicable to PGMA. The court agreed with the commissioner.
*834 Both parties advance many theories on why their position is correct, based upon the statutory language in several provisions of HRS chapters 431 and 432, and a perceived conflict between the two chapters pertaining to when provisions in chapter 431 apply to mutual benefit societies. The majority agrees with the commissioner, determining that there is an irreconcilable conflict and deciding that article 15 is applicable to the instant case.
I disagree with the majority's resolution of a perceived conflict between HRS chapters 431 and 432 on whether article 15 of HRS chapter 431 applies to mutual benefit societies. The import of the majority's construction is that HRS § 431:15-319(b) applies to the proceedings between VEBAH and the insurance commissioner, thus barring VEBAH's counterclaims and setoffs against the commissioner.

II.
It is well established that this court has a responsibility to construe statutes so as to avoid conflict between statutes, if possible. See State v. Griffin, 83 Hawai`i 105, 108 n. 4, 924 P.2d 1211, 1214 n. 4 (1996) ("The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." (Citation omitted.)); Reefshare, Ltd. v. Nagata, 70 Haw. 93, 98, 762 P.2d 169, 173 (1988) ("[C]ourts will not presume an oversight on the part of the legislature where such presumption is avoidable."); Ringor v. State, 88 Hawai`i 229, 233, 965 P.2d 162, 166 (App.1998) ("[L]egislative enactments are presumptively valid and should be interpreted in such a manner as to give them effect.").
The provisions at issue in this case, HRS chapters 431 and 432, were not only passed in the same legislative session, but were part of the same legislative enactment. See 1987 Haw. Sess. L. Acts 347, 348, & 349, vol II. Thus, our obligation to construe these provisions in such a way as to avoid conflict is all the more compelling. In the present case, a reasonable interpretation of the legislature's intent is available.

III.
A mutual benefit society is defined as "any corporation, unincorporated association, society, or entity" that engages in the activities in HRS § 432:1-104(2) (1993). Although mutual benefit societies may perform some of the functions of an insurance company, such as, inter alia, "[m]aking provision for the payment of benefits in case of sickness, disability, or death of its members[,]" HRS § 432:1-104(2)(A)(i), they are treated separately from other insurance organizations in HRS chapter 432, which deals specifically with mutual benefit societies. Our statutory scheme makes mutual benefit societies subject to HRS chapter 431, Hawai`i's insurance code, see HRS § 431:1-100 (1993), only to a limited extent. HRS § 431:1-101 states that "[a]ny person transacting a business of insurance under chapter 432 shall be subject to this code only to the extent provided in chapter 432." (Emphasis added.) HRS § 432:1-101 (1993), which defines the scope of HRS chapter 432, states that, "[e]xcept as expressly provided in this article, mutual benefit societies shall be exempt from the provisions of the insurance code." (Emphasis added.) Therefore, both HRS chapters 431 and 432 provide that the insurance code applies to mutual benefit societies only to the extent indicated in HRS chapter 432.

A.
As would be expected, HRS chapter 432 sets out requirements which are, for the most part, entirely separate and distinct from the insurance code. Part I includes general provisions; Part II sets out the requirements for organization of the mutual benefit societies; Part III governs the authority to offer benefits and registration requirements with the insurance commissioner; Part IV pertains to financial and reporting requirements; Part V sets out the examination powers of the insurance commissioner and the process by which a receiver is appointed; and Part VI sets out required provisions and benefits.
While, primarily, the statutes deal with mutual benefit societies and insurance entities separately, for some purposes, mutual *835 benefit societies are grouped together with insurance companies. Thus, several sections of HRS chapter 432 expressly refer to HRS chapter 431, making those provisions subject to the insurance code. For example, HRS § 432:1-402 (1993) restricts the type of investments that can be made by any domestic mutual benefit society which promises or offers to pay death, sick, disability, or other benefits to those authorized under article 6 of the insurance code. HRS § 432:1-402 specifically provides that "article 6 of the insurance code ... [is] hereby extended to and made applicable to the mutual benefit societies."

B.
Examination of a mutual benefit society is one area where mutual benefit societies are treated the same as insurance entities. As noted supra, Part V of HRS chapter 432 deals with financial examination of mutual benefit societies and the process of placing a financially unstable or noncompliant mutual benefit society into receivership. One provision of Part V, specifically, HRS § 432:1-501(a) (1993), references the insurance code, making mutual benefit societies subject to the examination provisions in the insurance code:
The powers, authorities, and duties relating to examinations vested in and imposed upon the [insurance] commissioner under article 2[1] of the insurance code are extended to and imposed upon the commissioner in respect to examinations of mutual benefit societies.

(Emphasis added.) Article 2 of the insurance code, HRS §§ 431:2-101 through -308 (1993 & Supp.2001), relates to the powers of the insurance commissioner to examine "the activities, operations, financial condition, and affairs of all persons transacting the business of insurance[.]" HRS § 431:2-301 (1993). Therefore, the insurance commissioner is authorized to exercise "[t]he powers, authorities, and duties relating to examinations vested in and imposed upon the commissioner under article 2 of the insurance code[,]" HRS § 432:1-501(a), with respect to determining whether any person has violated any provision of the insurance code or for securing useful information, see HRS § 431:2-201 (1993).
Receivership provisions of the insurance code, however, are not found within article 2 of the insurance code, but are contained in article 15 of the insurance code. See HRS §§ 431:15-101 through -411 (1993 & Supp. 2001). Thus, HRS § 432:1-501(a), which incorporates article 2 of the insurance code, does not also incorporate the receivership provisions of the insurance code.

IV.

A.
HRS chapter 432 contains a separate part governing receivership specifically for mutual benefit societies. Part V, HRS §§ 432:1-502 through -503 (1993), details the procedure to be used in appointing a receiver in the case of irregularities or insolvency, should these be found during the examinations pursuant to HRS § 432:1-501 and article 2 of the insurance code. This part is entirely separate from article 15 of the insurance code, HRS §§ 431:15-101 through -411. The specific provisions relating to the appointment of a receiver for a mutual benefit society, and the powers and duties accruing to the receiver, are thus found in HRS § 432:1-502.
The parties disagree on the version of HRS § 432:1-502 to be applied, however. I would agree with VEBAH that the timing of the proceeding governs. In the present case, the commissioner initiated proceedings to rehabilitate PGMA on March 11, 1997, pursuant to HRS chapter 431 of the insurance code. Thus, although the proceeding to rehabilitate PGMA was brought under the wrong chapter, see infra, the date that the proceedings were initiated governs, and the *836 1993 version of HRS § 432:1-502 applies to PGMA.[2]

B.
Prior to its amendment in July 1997, for purposes of receivership, HRS § 432:1-502 did not group mutual benefit societies with insurance entities as HRS chapter 432 had done for examination purposes, but, instead, grouped them together with financial institutions.[3] Under HRS § 432:1-502, and not according to HRS chapter 431, the receivership process contemplates that a receiver exercises the powers and duties as specified in HRS chapter 412, which governs receivers and conservators for financial institutions. HRS § 432:1-502 states as follows:
Receiver; appointment, powers, duties. (a) The commissioner shall give immediate notice thereof to the society and demand that irregularities be promptly corrected, impairments of assets be made good, that all unsafe or unauthorized practices be discontinued, or that there be compliance with the laws in question, if, upon the examination of any mutual benefit society, as defined in section 432:1-104(2), the commissioner ascertains and finds that:
(1) The laws of the State relating to such societies are not being fully observed;
(2) That any irregularities are being practiced;
(3) That the assets have been or are in danger of being impaired;
(4) That the society is conducting its affairs in an unsafe manner so that continuance of its business would be hazardous to the public; or
(5) That it is necessary for the protection of the members or creditors of the society.
(b) If the commissioner's demand issued under subsection (a) is not complied with within a reasonable time fixed by the commissioner, but not exceeding thirty days after the notice, then upon the request of the commissioner, application shall be made by the attorney general on the commissioner's behalf, to a judge or court of competent jurisdiction for the appointment of a receiver for the society. If it appears that any of the facts enumerated in the application as the ground for a receivership exists, the court or judge shall immediately appoint a competent person as receiver, and shall determine such receiver's bond and prescribe the receiver's duties, and may make such other or further orders as shall seem proper.
(c) Except as otherwise provided by the court or judge, any receiver appointed under this article shall have, exercise, and perform all of the powers and duties of a receiver of a financial institution under chapter 412, article 2, part IV.[4]
*837 Thus, mutual benefit societies are specifically grouped for receivership purposes with financial institutions under HRS chapter 412. However, a court may instead make the insurance code's article 15 applicable. HRS chapter 432 specifically provides that the examination provisions of HRS chapter 431 apply to mutual benefit societies, but the receiver's powers and duties should be exercised under HRS chapter 412, "except as otherwise provided by the court or judge." HRS § 432:1-502(c). Accordingly, should a court or judge "otherwise provide[,]" HRS § 432:1-502, article 15 of the insurance code may be applicable to mutual benefit societies, instead of the rights and powers listed under HRS chapter 412.

C.
The fact that a court may authorize a mutual benefit society receiver to utilize powers under article 15 of the insurance code is in harmony with the insurance code itself. HRS § 431:15-102 states that "[t]he proceedings authorized by this article may be applied to . . . [a]ll nonprofit service plans and all fraternal benefit societies and beneficial societies subject to chapter 432, Benefit Societies[.]" (Emphases added). Inasmuch as HRS § 431:15-102 employs the term "may," it is plainly meant to indicate permissive use, rather than mandatory use of article 15 for mutual benefit societies. See Krystoff v. Kalama Land Co., 88 Hawai`i 209, 214, 965 P.2d 142, 147 (App.1998).
The legislature's intent that application of article 15 to mutual benefit societies be permissive, rather than mandatory, is further established by the legislature's adjustment to the model act from which the insurance code derives. The legislature changed the term "shall" to the word "may" in HRS § 431:15-102, when first enacting HRS chapter 431. As observed by VEBAH, the insurance code is based upon the National Association of Insurance Commissioners (NAIC) Model Act. See 2 Hawai`i Insurance Commissioner, Revised and Consolidated Insurance Laws of the State of Hawai`i (1986) (stating that article 15 is based upon the NAIC Model Act, and that HRS § 431:15-102 is based upon the NAIC Insurance Code, Section 2, and Utah Code Ann. § 31A-27-101-1).
Section 2 of the NAIC Model Act states as follows:
The provisions of this Act shall be applied to:

A. All insurers who are doing, or have done, an insurance business in this state, and against whom claims arising from that business may exist now or in the future, and to all person subject to examination by the commissioner.
B. All insurers who purport to do an insurance business in this state;
C. All insurers who have insureds resident in this state;
D. All other persons organized or doing insurance business, or in the process of organizing with the intent to do an insurance business in this state;
E. All nonprofit service plans and all fraternal benefit societies and beneficial societies subject to [insert statute identification if desired];

F. All title insurance companies subject to [insert statute identification if desired];
G. All prepaid health care delivery plans [insert statute identification if desired];
H. [Any other specialty type insurer not covered by the general law which should be subject to this Act].
The legislative amendment to section 2, when adopting the NAIC Model Act as our insurance code, demonstrates that the legislature intended the application of article 15 to mutual benefit societies to be permissive, rather *838 than mandatory. See Helbush v. Mitchell, 34 Haw. 639, 639 (1938) ("Where a legislative body adopts a law of another State[,] all changes in words and phraseology will be presumed to have been made deliberately and with a purpose to limit, qualify or enlarge the adopted law to the extent that the changes in words and phrases imply."). Thus, if a court directs the procedures set forth in article 15 to apply, then "[t]he proceedings authorized under [article 15] may be applied" to mutual "beneficial societies[.]" HRS § 431:15-102.

V.

A.
The majority agrees that HRS § 432:1-502 "does not indicate that it was intended to be an exclusive remedy and does not limit the applicability of [a]rticle 15 to mutual benefit societies." Majority opinion at 60 n.8, 52 P.3d at 830 n.8. This is correct. However, HRS § 432:1-502 does mandate a process by which a receiver is appointed. It is not at all clear that such procedures were followed in the present case.
As recounted supra, on April 21, 1997, the insurance commissioner, as Rehabilitator of PGMA, filed a motion requesting, among other things, that the court enter an order of liquidation, pursuant to article 15 of the insurance code, HRS § 431:15-305(a) (1993). VEBAH objected to the applicability of article 15, and the question was deferred for later consideration. On September 26, 1997, the commissioner filed a motion seeking a declaratory judgment that article 15 applied to the proceedings against PGMA. At that time, the 1997 version of HRS § 432:1-502 was in force, see supra note 2, and, arguably, article 15 did apply. Subsequently, in its order of December 9, 1997, the court determined that article 15 of the insurance code applied to the proceedings filed against VEBAH.
Thus, it could be argued that the court, in stating that article 15 applied, rather than the rights and duties of a receiver detailed under HRS chapter 412, exercised its discretion pursuant to HRS § 432:1-502(c). However, there is no indication that the other provisions for appointing a receiver under HRS § 432:1-502(a) and (b) were followed. HRS § 432:1-502(a) mandates that the commissioner "give immediate notice ... to the [mutual benefit] society and demand that irregularities be promptly corrected, impairments of assets be made good, that all unsafe or unauthorized practices be discontinued, or that there be compliance with the laws[.]" There is no indication that such notice and demands were made by the commissioner.
HRS § 432:1-502(b) provides that if the demand, see supra, is not complied with, then an application to appoint a receiver shall be made by the attorney general on the commissioner's behalf, at the request of the commissioner. See id. In the present case, proceedings were initiated by the commissioner pursuant to HRS chapter 431. In his initial complaint, the commissioner stated that, "[o]n March 11, 1997, the Insurance Commissioner of the State of Hawai`i commenced the proceedings entitled Reynaldo D. Graulty v. Pacific Group Medical Association, S.P. No. 97-135, Circuit Court of the First Judicial Circuit, State of Hawai`i, seeking to rehabilitate PGMA pursuant to Chapter 431[.]"

B.
Based upon the record before us, the initial special proceeding instituted against PGMA appears to be at odds with the requirements of HRS § 432:1-502(b), because it could not be brought by the commissioner, and it could not be brought pursuant to HRS chapter 431. Under HRS § 432:1-502, the rights and powers of a receiver could only be altered by a court, pursuant to HRS § 432:1-502(c), after the receiver had been correctly appointed under the foregoing process. Whereas the other procedures were not followed, it is plain that the court did not exercise its discretion under HRS § 432:1-502(c), as it was not following the requirements of the statute but, rather, believed that HRS chapter 431 governed the proceedings. The proceedings were brought under HRS chapter 431, and the court repeatedly granted the commissioner's various motions made pursuant to HRS chapter 431. It is clear the court believed that HRS chapter 431 governed. Thus, the court would have *839 been unaware that applying article 15 was an option under HRS § 432:1-502(c).
Accordingly, although article 15 of the insurance code could have applied had the court exercised its discretion, there was plainly no discretion exercised. However, because the record before us is limited and the parties have not argued this point on appeal, I do not reach the question of whether the special proceeding initiated against PGMA is, itself, valid.

VI.
What is plainly evident based upon the record before us is that, whereas the court relied upon HRS chapter 431 throughout this proceeding, there could have been no exercise of discretion by the court under HRS § 432:1-502(c) in authorizing the commissioner to exercise rights and powers within article 15 of HRS chapter 431, as the court was apparently unaware that this was a discretionary matter. See State v. Perry, 93 Hawai`i 189, 198 n. 17, 998 P.2d 70, 79 n. 17 (App.2000) ("Because the court believed it had no discretion in choosing the sentence to be imposed other than to sentence [the d]efendant as it did, we remand the case to the court for resentencing to allow it to exercise its discretion within the bounds permitted under the sentencing statutes."); Doe v. Roe, 85 Hawai`i 151, 163, 938 P.2d 1170, 1182 (App.1997) (remanding to the family court for reevaluation of support obligations, because the court erroneously believed that its discretion was limited by an earlier judgment).
Therefore, this case should be remanded to the court to (1) determine whether it is authorized to exercise discretion under HRS § 432:1-502(c) to permit the commissioner to proceed under article 15 of the insurance code, and, if so, (2) allow it to exercise its discretion in applying or not applying article 15 in the present case.
NOTES
[1] Under HRS § 432:1-104(2) (Supp.2001), a mutual benefit society is any corporation, unincorporated association, society, or entity:

(A) Organized and carried on for the primary benefit of its members and their beneficiaries and not for profit, and:
(i) Making provision for the payment of benefits in case of sickness, disability, or death of its members, or disability, or death of its members' spouses or reciprocal beneficiaries or children, or
(ii) Making provision for the payment of any other benefits to or for its members,
whether or not the amount of the benefits is fixed or rests in the discretion of the society, its officers, or any other person or persons; and the fund from which the payment of the benefits shall be defrayed is derived from assessments or dues collected from its members, and the payment of death benefits is made to the families including reciprocal beneficiaries, heirs, blood relatives, or persons named by its members as their beneficiaries; or
(B) Organized and carried on for any purpose, which:
(i) Regularly requires money to be paid to it by its members, whether the money be in the form of dues, subscriptions, receipts, contributions, assessments or otherwise, and
(ii) Provides for the payment of any benefit or benefits or the payment of any money or the delivery of anything of value to its members or their relatives including reciprocal beneficiaries, or to any person or persons named by its members as their beneficiaries, or to any class of persons which includes or may include its members,
whether or not the amount or value of the benefit, benefits, money, or thing of value is fixed, or rests in the discretion of the society, its officers, or any other person or persons; or
(C) Organized and carried on for any purpose, whose requirements and provisions although not identical with, are determined by the commissioner to be substantially similar to, those enumerated in subparagraphs (A) and (B).
[2] VEBAH does not dispute the amount of withheld premiums.
[3] HRS § 431:15-301 (1993) provides that the Commissioner may petition the circuit court for an order authorizing him to rehabilitate a domestic insurer because, inter alia, the insurer is insolvent. On August 18, 1997, the circuit court declared that PGMA was insolvent at the time the rehabilitation order was entered.
[4] It is not clear from the record how or in what capacity VEBAH appeared in the Special Proceeding.
[5] HRS § 431:15-305 provides in relevant part:

(a) Whenever the commissioner believes further attempts to rehabilitate an insurer would substantially increase the risk of loss to creditors, policyholders or the public, or would be futile, the commissioner may petition the circuit court of the first judicial circuit for an order of liquidation. A petition under this subsection shall have the same effect as a petition under section 431:15-306 [(setting forth the grounds for liquidation)]. The court shall permit the directors of the insurer to take such actions as are reasonably necessary to defend against the petition and may order payment from the estate of the insurer of such costs and other expenses of defense as justice may require.
[6] HRS § 431:15-307 provides in relevant part:

(a) An order to liquidate the business of a domestic insurer shall appoint the commissioner and the commissioner's successors in office liquidator, and shall direct the liquidator forthwith to take possession of the assets of the insurer and to administer them under the general supervision of the court. The liquidator shall be vested by operation of law with the title to all of the property, contracts, and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, as of the entry of the final order of liquidation. The filing or recording of the order with the clerk of the circuit court of the first judicial circuit and at the bureau of conveyances shall impart the same notice as evidence of title.
[7] HRS § 431:15-319(b) provides:

(b) No setoff or counterclaim shall be allowed in favor of any person where:
(1) The obligation of the insurer to the person would not at the date of the filing of a petition for liquidation entitle the person to share as a claimant in the assets of the insurer;
(2) The obligation of the insurer to the person was purchased by or transferred to the person with a view to its being used as a setoff;
(3) The obligation of the person is to pay an assessment levied against the members or subscribers of the insurer, or is to pay a balance upon a subscription to the capital stock of the insurer, or is in any other way in the nature of a capital contribution; or
(4) The obligation of the person is to pay premiums whether earned or unearned, to the insurer.
[8] VEBAH notes that HRS § 432:1-502 (1993) allows for the appointment of a receiver upon the request of the Commissioner. However, HRS § 432:1-502 does not indicate that it was intended to be an exclusive remedy and does not limit the applicability of Article 15 to mutual benefit societies. Thus, there is no conflict between the application of HRS § 432:1-502 and Article 15, and effect may be given to both. See Wong, 88 at 53, 961 P.2d at 618.
[1] Among other examination provisions in article 2 of the insurance code, HRS § 431:2-203 (1993 & Supp.2001) establishes that, "[i]f, upon examination or at any other time, the commissioner has reasonable cause to believe that any domestic insurer requires supervision because it is in such condition as to render the continuance of its business hazardous to the public or to holders of its policies or certificates of insurance, or if the domestic insurer gave its consent, then the commissioner may summarily proceed pursuant to section 431:15-201." (Emphasis added.)
[2] The 1997 version, which became effective in July 1997, specifically refers to article 15 of chapter 431:

(d) The remedies and measures available to the commissioner under this section shall be in addition to, and not in lieu of, the remedies and measures available to the commissioner under article 15 of chapter 431.
1997 Haw. Sess. L. Act 367, § 2, at 1153 (emphasis added).
[3] HRS chapter 432 contemplates that receivership may be effected under HRS chapter 412, and, thus, HRS § 432:1-501 states that the insurance commissioner may use the staff of the commissioner for financial institutions, presumably because they would be in the best position to understand the internal workings of a mutual benefit society.
[4] For example, HRS § 412:2-408 (1993) describes the duties and powers of a conservator as follows:

(a) A conservator of a Hawai`i financial institution shall observe the provisions of this part except to the extent preempted by applicable federal law.
(b) Upon assuming office, the conservator may:
(1) Immediately take possession of the assets of the Hawai`i financial institution and operate the institution with all the rights and powers of the shareholders or members, directors, and officers with the authority to conduct all business of the Hawai`i financial institution;
(2) Collect all obligations and money due the Hawai`i financial institution;
(3) Preserve and conserve the assets and property of the Hawai`i financial institution;
(4) Set aside and make available for withdrawal by depositors and payment to other creditors on a ratable basis such amounts as in the opinion of the commissioner may safely be used for this purpose; and
(5) Take such action as may be necessary to carry out the purposes of the conservatorship, consistent with the conservator's appointment order, and as may be required by law, the commissioner or any court having jurisdiction over the matter. Provided, however, that the conservator shall at all times be subject to the direction and supervision of the commissioner.
HRS § 412:2-412 (1993) further describes the duties and powers of a receiver. HRS § 412:2-416 (1993) notes the priority of claimants when a receiver liquidates the assets of an institution.