104 P.3d 905

Thomas R. KINKAID, William Kowalski, Henri P. Kostermans, Ryoko Kostermans, Walter S. Leong, Terri Leong, Richard A. Moody, Ernest W. Tuttle, Pamela Tuttle, Gertrud Eberwein, Bruce F. Connell, Ernesto V. Castro, et al., Pearl R. Groves, Glenn H. Meyer, Leo A. Young, Jeanette M. Young, Glenn R. Oakes, Cynthia R. Oakes, David J. Novick, Carol L. Novick, Peter L. Chan, Terry T. Chan, Alfonso J. Baeza, Fujiko Baeza, Alma V. Brosio, Karen K. Schumann, American Trust Co. of Hawaii, Harriette W. Rhodes, Estate of B.T. Kanbara, James W. Witt, Robet R. Bergis, Black Pearl Ventures, Inc., Betty June Caulo, Frank M. Nowdesha, Marsha E. Lewis, Bernard J. Gainey, Frank J. Hata, Russell Anderson Maxine Anderson, Young Family Trust, Richard Brosselmann, Kristine Brosselmann, Kendrick Wong, Kenneth Alford, Sophia Alford Survivor's Trust, Jerald V. Dunlap, Severn Starzynski, Nobuyuki Ishima, McProud Family Trust, HHBW Family Limited Partnership, Richard C. Elliott, Joan Elliott, Velma Jean Brixon, Ted Simon, Karen L. Simon, Thomas Khoy Fong Wong, Wesley N. Callahan, Janice M. Callahan, Jeffrey J. Rummel, Elisa V. Rummel, Adolph Laepple, Erica Laepple, Wayland S. Dudley, Grace Kae, Carol A. Laechelt, Hugh C. Pape, Barbara J. Pape, Oliver Benediktson Trust, John H. Coleman, Bernard Neale, Sang Tea Bobay, Yang Ja Wang, William F. Thompson, Jr., Lewis G. Waldo, James J. Sullivan, Leland M. Garrison, Ronald J. Smerling, Frank Rees, Virginia Rees, Anne–Marie Volk, Daniel W. Moorman, Sandra R. Moorman, Matthew H. Witteman, Mary F. Witteman, Marsha E. Lewis, Franklin M. Tokioka, H. Harry Mueggenburg, Barry D. Berquist, Willis E. Howard III, Patricia Rudy, James R. Johnston II, Sandra R. Johnston, Herbert Y.K. Wong, Paul N. Best, Louis W. Crompton, Alicia Y. Crompton, Donald S. Robertson, Roy D. Gustafson, Marilyn A Gustafson, Carl Olson, Dorothy G. Howard, Edward P. Prindle, Everett S. Mayhood, Ellen F. Mayhood, James H. Kamo, Dora M. Kamo, Augustus Tagliaferri, Jack M. Feliz, Marie A. Feliz, Yolo Trust, Judy L. Moore, Paul R. Olson, Helen C. Olson, William C. Warren, George K. Igi, Sharon D. Igi, Mary P. Berg, Bruce Holliday, Harold L. Preeman, Albert W. Fink, Beverly A. Fink, Peter Choi, Myung Choi, and Salisbury Restaurant Enterprises, Appellants–Appellants

v.

BOARD OF REVIEW OF THE CITY AND COUNTY OF HONOLULU, Appellee–Appellee.

No. 24100.

Supreme Court of Hawai'i.

Oct. 8, 2004.

Reconsideration Granted in part and as Amended Nov. 29, 2004.

Roger S. Mosely, Nancy J. Youngren, Honolulu, and Nathan C. Lampard of Case Bigelow & Lombardi, for appellants-appellants.

Chris A. Diebling, Deputy Corporation Counsel, for appellee-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by NAKAYAMA, J.

Appellants-appellants Thomas R. Kinkaid, et al. (Appellants), appeal from the January 23, 2001 order of the circuit court of the first circuit, the Honorable Gary W.B. Chang presiding, dismissing Appellants' appeal from the Board of Review of the City and County of Honolulu's (the Board) decision affirming Appellants' real property tax assessments. On appeal, Appellants contend that the cir-

cuit court erred in dismissing their appeal because: (1) the Hawai'i Administrative Procedures Act (HAPA) entitles Appellants to seek review of the Board's decision in circuit court, inasmuch as the Board's affirmance of Appellants' tax assessments was the "final decision" in a "contested case" before an administrative "agency;" (2) the procedure for obtaining judicial review of the Board's decision prescribed in the tax code is not exclusive; and (3) judicial review under HAPA is necessary to prevent the Board from acting arbitrarily and abusing its discretion. For the following reasons, we affirm.

## I. BACKGROUND

Appellants number over one hundred fee owners of units in the "Waikiki Shore" building, located at 2161 Kalia Road in Honolulu. Prior to the 2000–2001 tax year, the City and County of Honolulu (the City) classified Appellants' units as "Apartments" for purposes of calculating Appellants' real property tax assessments. In October 1999, the City's Real Property Assessment Division (Assessment Division) reclassified the majority of the Waikiki Shore's units as "Hotel and Resort." As a consequence of the reclassification, Appellants' real property tax liability allegedly doubled in the 2000–2001 tax year.

Appellants appealed the Assessment Division's reclassification and property tax assessments to the Board. During the Board hearing, Appellants presented evidence that the Assessment Division's reclassification was unlawful.[1] Following the hearing, the Board affirmed the Assessment Division's assessments. No written findings of fact or conclusions of law accompanied the Board's decision.

1. The substance of the parties' arguments before the Board is immaterial to the jurisdictional question posed by this appeal.

2. After the tax appeal court upheld the assessments, Appellants appealed from that judgment as well. See In re Alford, S.Ct. No. 25275 (filed Aug. 19, 2002).

3. In granting the Board's motion to dismiss the appeal, the circuit court stated:

The Court does believe that Chapter 91 is a statute of general application, and Chapter 232

Appellants timely appealed from the Board's decision to the tax appeal court pursuant to Hawai'i Revised Statutes (HRS) § 232–17 (2001).[2] They thereafter filed a second notice of appeal, this time in the circuit court of the first circuit pursuant to HRS § 91–14(a) (1993). After the circuit court ordered the latter appeal dismissed for lack of jurisdiction,[3] Appellants timely appealed to this court.

## II. STANDARD OF REVIEW

### A. Jurisdiction

■ "Whether a court possesses subject matter jurisdiction is a question of law reviewable de novo." In re Doe Children, 105 Hawai'i 38, 52, 93 P.3d 1145, 1159 (2004) (quoting In re Doe Children, 96 Hawai'i 272, 283, 30 P.3d 878, 889 (2001)).

### B. Statutory Interpretation

■ "The interpretation of a statute is a question of law reviewable de novo." Lindinha v. Hilo Coast Processing Co., 104 Hawai'i 164, 171, 86 P.3d 973, 980 (2004) (quoting Franks v. City & County of Honolulu, 74 Haw. 328, 334, 843 P.2d 668, 671 (1993)).

## III. DISCUSSION

■ Appellants argue that the circuit court erred in dismissing their appeal because: (1) Appellants satisfied the jurisdictional prerequisites for obtaining judicial review of the Board's decision under the HAPA; (2) the appellate review of Board decisions provided for under the tax code is a non-exclusive remedy; and (3) the Board's arbitrary conduct and abuse of discretion during Appellants' administrative proceeding

is a statute of specific application for tax appeals. And in general rules of statutory construction, the specific prevails over the general.

Additionally, Section 232–17 specifically provides that an appeal shall lie to the Tax Appeal Court. And this Court, while it agrees that the Tax Appeal Court does not have exclusive jurisdiction on all tax matters generally absent any equitable concerns, a tax appeal matter such as this should go to the Tax Appeal Court and not to the general Circuit Court.

can only be addressed effectively through judicial review under HAPA.[4] The Board counters that a plain reading of the relevant statutes and their accompanying legislative history demonstrates that the legislature intended the tax appeal court to exercise exclusive jurisdiction over appeals from the Board.

Upon review of the record, we conclude that (1) reasonably interpreted, the tax code vests the tax appeal court with exclusive jurisdiction over Appellants' appeal, and (2) the tax appeal court's required *de novo* review of Appellants' contested tax liability adequately safeguards Appellants from arbitrary and unreasonable assessments. The order of the circuit court dismissing Appellants' appeal is therefore affirmed.

**A. Jurisdiction under HRS § 91–14(a)**

■ Appellants base their right to judicial review in circuit court on HRS § 91–14(a), which provides, in pertinent part: "Any person aggrieved by a final decision and order in a contested case ... is entitled to judicial review thereof under this chapter[.]" HRS § 91–14(a) (1993).

■ To fall within the purview of HRS § 91–14(a), a party must establish at the outset that the decision or order sought to be reviewed originates with an "agency" as defined under HAPA. *See Sandy Beach Defense Fund v. City Council of the City & County of Honolulu,* 70 Haw. 361, 368–369, 773 P.2d 250, 255–256 (1989); *Town v. Land Use Comm'n,* 55 Haw. 538, 545, 524 P.2d 84, 89 (1974). The appellant must accordingly demonstrate that the challenged government entity is a "state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases," and is not "in the legislative or judicial branches." *See* HRS § 91–1(1) (1993) (defining "agency").

■ Only after confirming that HAPA applies to the targeted government actor may the appellant endeavor to satisfy the substantive requirements of HRS § 91–14(a):

[F]irst, the proceeding that resulted in the unfavorable agency action must have been a "contested case" hearing—i.e., a hearing that was 1) "required by law" and 2) determined the "rights, duties, and privileges of specific parties"; second, the agency's action must represent "a final decision and order," or "a preliminary ruling" such that deferral of review would deprive the claimant of adequate relief; third, the claimant must have followed the applicable agency rules and, therefore, have been involved "in" the contested case; and finally, the claimant's legal interests must have been injured—i.e., the claimant must have standing to appeal.

*Public Access Shoreline Hawaii v. Hawai'i County Planning Comm'n (PASH),* 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995).

Appellants correctly assert that the Board is an "agency" under HRS § 91–1(1). Established by city ordinance, the Board is a municipal entity detached from the legislative and judicial branches. *See* Revised Ordinances of Honolulu (ROH) § 8–12.7 (1998). The Board's members—all of whom are appointed by the mayor and confirmed by the city council—are moreover empowered to "hear disputes between the director [of finance] and any taxpayer in all cases in which appeals have been duly taken." *See* Revised Charter of Honolulu § 13–103(b) (2000); ROH § 8–12.7(a) (1998). As HAPA's definition of "agency" encompasses those "county board[s]" "authorized by law" "to adjudicate contested cases," the Board falls decidedly within the statute's definitional ambit. *See* HRS § 91–1(1) (1993).[5]

Appellants additionally comply with HRS § 91–14(a)'s jurisdictional requirements as

---

4. Appellants also challenge the substantive basis for the Board's decision to affirm their tax assessments. As the appeal in this case is from the circuit court's order dismissing Appellants' appeal, we are limited to reviewing whether the circuit court erred in dismissing the case on jurisdictional grounds. Appellants' arguments on the merits are therefore premature. *See Amantiad v. Odum,* 90 Hawai'i 152, 159, 977 P.2d 160, 167 (1999) ("When reviewing a case where

the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction.").

5. While Appellee is a county board of review, this conclusion applies with equal force to the state boards of review, which are similarly composed. *See* Part III.B, *infra.*

outlined in *PASH*. The Board's proceedings below constituted a " 'contested case' hearing," inasmuch as the proceedings were "required" by applicable city ordinances,[6] and ultimately yielded an affirmance of Appellants' tax assessments that affected Appellants' "rights, duties, and privileges." The Board's decision was "final" as well, given that nothing in ROH § 8–12 granted Appellants additional administrative remedies or otherwise afforded the Board discretion to reconsider its ruling.

Turning to *PASH's* third requirement, Appellants' compliance with applicable agency rules may be inferred in light of the final result: an administrative determination based on the merits, in which the Board alleged no improprieties by Appellants in the proceedings. Finally, the Assessment Division's election to reclassify Appellants' properties injured a legally cognizable interest by subjecting the units to a higher tax rate, and accordingly gave Appellant's "standing to appeal."

Appellants are therefore correct in asserting their compliance with the jurisdictional prerequisites to judicial review under HRS § 91–14(a).

## B. HRS § 232–17 Vests the Tax Appeal Court with Exclusive Jurisdiction Over Appellants' Appeal from the Board's Decision

■ The parties are in disagreement as to whether exclusive jurisdiction to review the Board's decision rests with the tax appeal court pursuant to HRS § 232–17. That section provides, in pertinent part: "An appeal shall lie to the tax appeal court from the decision of a state board of review, or equivalent administrative body established by county ordinance, by the filing, by the taxpayer, the county, or the tax assessor, of a written notice of appeal[.]" HRS § 232–17 (2001).

In the instant case, HRS § 232–17 establishes the tax appeal court's jurisdiction to hear Appellants' appeal from the Board's decision—a point on which the parties do not disagree.[7] When compared with the state boards of review, the Board is an "equivalent administrative body established by county ordinance." *Compare* HRS §§ 232–6 and 232–7 (2001) (state boards), *with* ROH §§ 8–12.6 and 8–12.7 (1998) (city boards). Nor do we question that, by affirming Appellants' assessments, the Board rendered a "decision" within the statute's meaning.

Appellants' compliance with the jurisdictional prerequisites of both HRS § 91–14(a) and § 232–17 squarely presents for our decision the salient issue pressed by the parties: Whether the agency-specific appellate procedure prescribed in HRS § 232–17 precludes Appellants' resort to judicial review under HRS § 91–14(a).[8] The question is one of first

---

6. *See* ROH § 8–12.7(a) (1998) ("Each board for the City and County of Honolulu shall hear disputes between the director and any taxpayer in all cases in which appeals have been duly taken."); *id.* § 8–12.7(d) ("Each board shall hold public meetings ... and shall hear, as expeditiously as possible, all appeals assigned to it for each year.").

7. The disagreement is solely over whether the tax appeal court's jurisdiction is exclusive or concurrent.

8. Accordingly, the question presented is not whether the circuit courts have no jurisdiction to hear tax appeals. Our precedents indicate that to a limited extent they do. *See In re Simpson Manor, Inc.*, 57 Haw. 1, 3, 548 P.2d 246, 248 (1976) ("[C]ircuit courts do have equity jurisdiction to hear excise tax disputes prior to payment of the disputed taxes where the taxpayer can show that prior payment would destroy its busi-

ness, ruin it financially and inflict loss for which it would have no adequate remedy at law." (internal quotation marks omitted)).

The instant case gives us no occasion to consider whether the jurisdictional grant conferred in *Simpson Manor* remains good law. We do note, however, that the circuit court's equity jurisdiction in *Simpson Manor* was based on the well-founded concern that—in certain circumstances—a taxpayer disputing her tax assessment "would have no adequate remedy at law" were her right to challenge that liability conditioned upon pre-payment of the contested monies. Subsequent amendments to the tax code have alleviated that concern to some degree. First, the legislature eliminated the pre-payment requirement for appeals to the boards of review for many types of tax assessments. *See* Act 199, §§ 2–10, 2000 Session Laws of Hawai'i 484–486. Moreover, pre-payment is no longer mandated for an appeal to the tax appeal court where the amount contested does not exceed $50,000, and

impression.[9]

■ The jurisdictions of the respective courts being matters of statutory concern, our analysis begins with the language of the statutes themselves. We interpret statutes foremost in light of the plain meaning accorded their operative terms. *See State v. Viglielmo*, 105 Hawai'i 197, 203, 95 P.3d 952, 958 (2004). Such terms must moreover be read "in the context of the entire statute and construe[d] ... in a manner consistent with its purpose." *Id.* (quoting *State v. Kaua*, 102 Hawai'i 1, 8, 72 P.3d 473, 480 (2003)). To this end, "[a] rational, sensible, and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable." *Metcalf v. Voluntary Employees' Benefit Ass'n of Hawai'i*, 99 Hawai'i 53, 59, 52 P.3d 823, 829 (2002) (quoting *S. Foods Group, L.P. v. Dep't of Educ.*, 89 Hawai'i 443, 453–454, 974 P.2d 1033, 1043–1044 (1999)). By the same token, the legislature must be presumed "not to intend an absurd result," such that "legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." *S. Foods Group*, 89 Hawai'i at 454, 974 P.2d at 1044 (quoting *State v. Arceo*, 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996)).

Appellants assert that jurisdiction in the circuit court is governed by HRS § 91–14(a), which makes "[a]ny person aggrieved by a final decision and order in a contested case ... *entitled to* judicial review thereof under this chapter." *See* HRS § 91–14(a) (1993) (emphasis added). As used in the text, the word "entitled" connotes a "proper grounds for seeking or claiming;" the corollary term "entitlement"—though not employed in the statute itself—similarly indicates a "[r]ight to benefits ... which may not be abridged." *Black's Law Dictionary* 532 (6th ed.1990). A plain reading of HRS § 91–14(a) accordingly suggests that an aggrieved party who satisfies the statute's jurisdictional prerequisites may secure judicial review in circuit court as a matter of right.

Applying the foregoing analysis to HRS § 232–17 yields an equally unambiguous result. The pertinent language of that section provides: "An appeal *shall lie* to the tax appeal court from the decision of a state board of review, or equivalent administrative body established by county ordinance." HRS § 232–17 (2001) (emphasis added). In common parlance, the operative term "shall" is taken to mean "a word of command, and one which has always or which must be given a compulsory meaning[.]" *Black's Law Dictionary* 1375 (6th ed.1990). The plain import of the statutory text therefore directs that the tax appeal court be vested with jurisdiction over board of review appeals.

So construed, the conflict among the statutes is apparent. Specifically, the "compulsory" jurisdiction granted the tax appeal court under HRS § 232–17 cannot, under any reasonable circumstance, be squared with an aggrieved party's countervailing "right" to demand review in circuit court under HRS § 91–14(a).

■ When faced with "a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter," this court invariably favors the specific. *Metcalf*, 99 Hawai'i at 59, 52 P.3d at 829; *Wong v. Takeuchi*, 88 Hawai'i 46, 53, 961 P.2d 611, 618 (1998).[10] In the instant case, HRS § 232–17 unmistakably concerns the narrow topic of taxpayer and government appeals from state and county board of review decisions. HRS § 91–14, by contrast, is a statute of broad application, governing judicial review of contested proceedings before government agencies generally. The conclusion follows that the agency-specific provision for appellate review found in HRS § 232–17 supplants the more general judicial remedy

the taxpayer proves that pre-payment would cause her "irreparable injury." *See* HRS § 235–114 (2001).

**9.** *See In re Kuwaye Bros., Inc.*, 50 Haw. 172, 176, 435 P.2d 21, 23 (1967) ("A ruling on the applicability of [HRS § 91–14] will involve the question, as yet undecided by this court, as to whether the provisions of the Hawaii Administrative Procedure Act override the provisions on the same points found in statutes covering the operations of specific administrative agencies.").

**10.** Other authorities are in accord. *See, e.g.,* 2B Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 51.02, at 187 (6th ed. 2000) ("Where a conflict exists the more specific statute controls over the more general one.").

provided in HRS § 91–14.[11] *See Metcalf,* 99 Hawai'i at 59, 52 P.3d at 829.[12]

Apprising HRS § 232–17 in the "context" of its broader statutory scheme reinforces our conclusion that jurisdiction to hear Appellants' appeal rests exclusively with the tax appeal court. *See Viglielmo,* 105 Hawai'i at 203, 95 P.3d at 958. The tax code establishes the tax appeal court as the court of appeal for disputed tax assessments initially heard by the boards of review. *See* HRS § 232–17 (2001). A taxpayer who appeals from a board of review's decision must generally pay the full amount of taxes in dispute as a precondition to the tax appeal court's exercise of jurisdiction over the appeal. *See, e.g.,* HRS § 235–114 (2001) (income tax assessments); *id.* § 237–42 (general excise tax assessments); *id.* § 237D–11 (transient accommodations tax assessments); *id.* § 243–14.5 (fuel tax assessments); *id.* § 244D–12 (liquor tax assessments); *id.* § 245–10 (cigarette and tobacco tax assessments); *id.* § 247–4.5 (conveyance tax assessments); *id.* § 251–10 (vehicle surcharge tax assessments); *id.* § 346E–8 (Supp.2003) (nursing facility tax assessments); *id.* § 431:7–204.5 (1993) (insurance premium tax assessments). By conditioning the taxpayer's further right of appeal upon payment of the contested tax liability, the relevant legislative bodies undoubtedly sought the best practicable balance between the needs of the public fisc and the taxpayer's interest in a fair assessment.

That balance of interests would be compromised significantly were we to recognize the circuit court's competing jurisdiction to hear

---

**11.** Other courts that have addressed the interplay between a general administrative procedures act and an agency-specific statutory process of appeal have reached divergent results. Some jurisdictions deem agency-specific statutes to afford the exclusive appellate remedy. *See, e.g., Dow Chem. Co. v. Pitre,* 421 So.2d 847, 850 (La.1982); *Dossin's Food Prods., Inc. v. Mich. State Tax Comm'n,* 360 Mich. 312, 103 N.W.2d 474, 476 (1960); *Imlay Township Primary Sch. Dist. No. 5 v. State Bd. of Educ.,* 359 Mich. 478, 102 N.W.2d 720, 723 (1960); *Frye v. Memphis State Univ.,* 671 S.W.2d 467, 468–469 (Tenn.1984).

In contrast, other jurisdictions interpret their respective state administrative procedures act to afford appellants the option to appeal either in accordance with the general administrative act or under the agency-specific statute. *See, e.g., Travelers Indem. Co. v. Monroe,* 257 Ark. 1029, 522 S.W.2d 431, 432–433 (1975); *County of Ramsey v. Minn. Pub. Utils. Comm'n,* 345 N.W.2d 740, 743 (Minn.1984); *Linton v. Farmington Mun. Schs.,* 86 N.M. 748, 527 P.2d 789, 790–791 (1974); *Owen Steel Co. v. S.C. Tax Comm'n,* 281 S.C. 80, 313 S.E.2d 636, 637–638 (Ct.App.1984); *Dep't of Pub. Safety v. Weinrich,* 263 N.W.2d 690, 691–692 (S.D.1978); *see also* 2 Frank E. Cooper, *State Administrative Law* 609–611 (1965) ("Clearly, it was the intention of the Commissioners on Uniform State Laws that ... the appellant would be able to choose between the several available methods—he could proceed under the administrative procedure act or under the particular statute relating to a named agency.").

**12.** The development of other provisions governing tax appeals reinforces our conclusion that the legislature intended to effect a centralized and exclusive appellate procedure in enacting HRS § 232–17. Prior to 1967, for instance, a taxpayer seeking to recover taxes paid under protest initiated the action in circuit court. *See* Revised Laws of Hawai'i (RLH) § 34–24 (1965 Supp.)

("Moneys representing a claim in favor of the State may be paid ... under protest[.] Action to recover the money so paid, or proceedings to adjust the claim may be commenced by the payer or claimant ... in a court of competent jurisdiction[.]"); *see also In re Tax Appeal of Valley of the Temples Corp.,* 56 Haw. 229, 231 n. 2, 533 P.2d 1218, 1220 n. 2 (1975) ("[T]he determination of claims under [RLH § 34–24, re-codified as] HRS § 40–35, ... earlier had been within the jurisdiction of the circuit courts.").

In 1967, the legislature moved to amend that procedure. Specifically, Act 231, § 7, inserted the jurisdictional proviso that "any action to recover payment of taxes under protest shall be commenced in the tax appeal court." *See* Act 231, § 7, 1967 Session Laws of Hawai'i 349. Explaining the impetus behind the amendment, the standing committee report accompanying the bill stated:

... [T]he present law provides the taxpayer with two avenues of appeal, one to the Tax Appeal Court and the other to the Circuit Court. This has created confusion and an undesirable situation.

This bill provides for the appointment of one of the judges of the Circuit Court to serve as judge of the Tax Appeal Court within the circuit court system. *This eliminates the dual appeal procedure by providing for a uniform method of appeal in tax matters.*

Hse. Stand. Comm. Rep. No. 706, 1967 House Journal 749 (emphasis added); *see also* S. Stand. Comm. Rep. No. 830, 1967 Senate Journal 1211 (same); S. Stand. Comm. Rep. No. 899, 1967 Senate Journal 1245–1246 (same).

An interpretation of HRS § 232–17 that provides for "a uniform method of appeal in tax matters" therefore adheres to the legislative intent underlying reforms to appellate procedures in other areas of the tax code.

tax appeals under HRS § 91–14. Inasmuch as HAPA does not predicate an aggrieved person's right to judicial review upon the pre-payment of any disputed monies, the taxpayer's pursuit of redress under that statute would deprive the State and counties of any meaningful opportunity to secure their financial position during the pendency of an appeal. The resulting peril to the government's fiscal security convinces us that a "rational, sensible, and practicable interpretation" of HRS § 232–17 must, of necessity, mandate that its appellate procedures be followed to the exclusion of those in HRS § 91–14(a). *See Metcalf,* 99 Hawai'i at 59, 52 P.3d at 829.

In this respect, Appellants' contention that "meaningful" review of the Board's deliberative process and decision can only be had before the circuit court pursuant to HRS § 91–14 is unavailing. Judicial review of administrative conduct is necessary to guard against agency action which "clearly exceeds bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." *S. Foods Group,* 89 Hawai'i at 452, 974 P.2d at 1042 (quoting *Craft v. Peebles,* 78 Hawai'i 287, 301, 893 P.2d 138, 152 (1995)); *see also* 1 Frank E. Cooper, *State Administrative Law* 44 (1965) (courts are authorized "to set aside administrative action which violates constitutional or statutory provisions, which is without evidentiary support, or which is arbitrary or capricious"). HRS chapter 232 advances this important public interest by guaranteeing a taxpayer who appeals an assessment before a board of review the right to have the board's decision examined *de novo* by the tax appeal court. *See* HRS § 232–13 (2001). Appellants fail to articulate why the procedural safeguard of *de novo* review does not, at least in this context, adequately ensure that a taxpayer's assess-

ment reflects a correct application of law and a reasonable appraisal of the relevant facts.[13]

## IV. CONCLUSION

The order of the circuit court dismissing Appellants' appeal is affirmed.

---

**13.** *De novo* review would seem preferable to Appellants, as the typical HAPA remedy for an incomplete agency record is to remand the cause to the agency for entry of the required findings and conclusions. *See Int'l Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.,* 68 Haw. 316, 328, 713 P.2d 943, 953 (1986) ("A remand pursuant to HRS § 91–14(g) is appropriate if an agency's findings are incomplete and provide no basis for review."); *In re Kauai Elec. Div. of Citizens Utils. Co.,* 60 Haw. 166, 185, 590 P.2d 524, 537 (1978) (where an agency order "is unsupported

by findings of fact and conclusions [of law], this court is authorized to remand the cause to the [agency] for further proceedings, HRS § 91–14(g), and require the [agency] to make appropriate findings."). Accordingly, the procedural defect alleged by Appellants—namely, that the Board failed to enter any written findings of fact or conclusions of law—would likely afford the circuit court no grounds for outright reversal of the Board's decision to affirm Appellants' tax assessments.